

DA 08-0356

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2009 MT 203

IN RE THE MARRIAGE OF
RANDY WILSON,

      Petitioner and Appellee,

  and

MARY WILSON n/k/a MARY DENEEN,

      Respondent and Appellant.

APPEAL FROM:    District Court of the Eleventh Judicial District,
In and For the County of Flathead, Cause No. DR-06-347(A)
Honorable Ted O. Lympus, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Daniel G. Gillispie; Billings Legal, PLLC, Billings, Montana

      For Appellee:

          Bruce G. McEvoy, Kai Groenke; Johnson, Berg, McEvoy &
Bostock, PLLP, Kalispell, Montana

                    Submitted on Briefs:  April 15, 2009

                    Decided:  June 9, 2009

Filed:

            _____
                          Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1     Mary Deneen (Mary) appeals from the decree of dissolution and parenting plan of the Eleventh Judicial District Court, Flathead County, granting sole custody of the couple's two minor children to father Randy Wilson (Randy), requiring Mary to have supervised visitation with the children, and distributing the marital estate. We affirm in part and remand for recalculation of child support obligations.

¶2     Mary argues that the District Court did not make any findings based on the statutory factors listed in § 40-4-212, MCA, when determining that sole custody with Randy would be in the children's best interests. Mary also challenges limitations to her visitation rights and the marital property division, including child support obligations. We restate the issues on appeal as follows:

¶3     Whether the District Court erred in determining that sole custody of the children by Randy was in the children's best interest, in light of the factors in § 40-4-212, MCA.

¶4     Whether the District Court erred by not making a specific finding that unsupervised visitation with Mary would "endanger" the children.

¶5     Whether the District Court equitably divided the marital estate, including child support obligations.

## BACKGROUND

¶6     This child custody case was precipitated by a parental disagreement about medical treatment related to Lyme disease. Mary became concerned in May 2006 that her minor daughters had been bitten by ticks and displayed signs of illness. Mary proceeded to visit a number of doctors in Montana and California throughout the summer, depriving Randy

2

of all contact with the children during that time. On July 18, 2006, Randy filed a petition for dissolution, along with a motion for referral to Flathead County Family Court Services (FCS).

¶7 The District Court placed the children with Randy as part of the dissolution action, as recommended by FCS on September 19, 2006. The court reaffirmed this order on October 24, 2006, following a show cause hearing on October 17, 2006, in which both Mary and Randy testified. The court's order noted that Mary was not willing to work with FCS and found that the recommendations of FCS served the best interests of the children. The court limited Mary's contact with the children to FCS recommendations, which at that time involved supervised visitation.

¶8 The court granted Randy a temporary restraining order (TRO) on November 29, 2006. On December 11, 2006, FCS filed another report noting Mary's "out of control" behavior and refusal to abide by the policies of the visitation supervisor, and recommended Mary's contact with the daughters be suspended until she sought psychiatric evaluation and treatment and made behavioral improvements to ensure the daughters would not be negatively affected by her inappropriate behavior and conversations. Mary violated terms of the TRO and Randy converted it to a protective order on January 2, 2007. On April 23, 2007, FCS submitted a comprehensive report to the court, which discussed several of the factors considered under the best interest of the child standard pursuant to § 40-4-212, MCA. FCS recommended that Mary have supervised visits with the children with a goal to transition to unsupervised visits when Mary's behavior improved. However, a subsequent FCS report on June 18, 2007, noted

3

that Mary's behavior had degenerated to a point where continued visits did not serve the children's best interests. FCS recommended that Mary's contact with the children be suspended until she followed through with a specific treatment plan as recommended by doctors who had evaluated her.

¶9 Mary cycled through four attorneys who either withdrew or were dismissed by her. This pattern of dismissed attorneys and delayed proceedings carried on through 2008. The court denied another continuance on June 30, 2008, and trial commenced with Mary appearing by telephone. She hung up in the middle of the trial. The court entered its findings of fact, conclusions of law and decree, as well as a separate parenting plan binding the parties to future FCS recommendations.

## STANDARD OF REVIEW

¶10 We review a custody determination to determine whether the findings of fact upon which the district court relied in rendering its decision are clearly erroneous. *In re Marriage of McKenna*, 2000 MT 58, ¶ 14, 299 Mont. 13, 996 P.2d 386. Where the findings are supported by substantial credible evidence, this Court will affirm the custody decision unless it is shown that the trial court committed a clear abuse of discretion. *Marriage of McKenna*, ¶ 14.

¶11 The Court's standard of review for custody and visitation is whether substantial credible evidence supports the district court's judgment, and we will uphold the district court's findings and conclusions unless they clearly demonstrate an abuse of discretion. *Schiller v. Schiller*, 2002 MT 103, ¶ 24, 309 Mont. 431, 47 P.3d 816.

4

¶12     A district court's division of marital property will not be disturbed on review unless there has been a clear abuse of discretion as manifested by a substantially inequitable division of the marital assets resulting in substantial injustice. *In re Marriage of Bolt*, 259 Mont. 54, 59, 854 P.2d 322, 325 (1993). We review a district court's ruling establishing or modifying obligations for child support for abuse of discretion. *McDermott-Yeargin v. McDermott*, 2003 MT 283, ¶ 9, 318 Mont. 13, 79 P.3d 245.

## DISCUSSION

¶13     *Whether the District Court erred in determining that sole custody of the children by Randy was in the children's best interest, in light of the factors in § 40-4-212, MCA.*

¶14     In a marriage dissolution proceeding, the district court is required to determine child custody matters in accordance with the best interest of the child. Section 40-4-212, MCA. While the court must consider several statutory factors in determining the child's best interest pursuant to § 40-4-212, MCA, it need not make specific findings pertaining to each factor. *Marriage of McKenna*, ¶ 15.

¶15     The District Court heard testimony from the Director of FCS and both parents, and reviewed reports filed by FCS and psychological evaluations of both parents. The District Court was most concerned about the mental health of both parties, the threat of abuse by Mary regarding her overzealous pursuit of Lyme disease treatment for the children and her own mental instability. The court considered whether frequent or continuing contact with the children would be detrimental to them due to Mary's previous attempt to take them out of Randy's control to seek repeated and questionable medical treatments and diagnoses. These are factors that the District Court properly

5

considered under § 40-4-212(e), (f), and (l), MCA. "We will not substitute our judgment for that of the trier of fact as the trial court is in a better position than this Court to resolve child custody issues." *Marriage of McKenna*, ¶ 17.

¶16 We hold that there is substantial credible evidence supporting the District Court's determination that it is in the minor children's best interest to adopt the recommendations made by Flathead County Family Court Services in its report to the court. "Where, as here, the trial court has properly considered the factors set forth in § 40-4-212, MCA, has relied on professional assessments of the child's best interest, and has made an 'independent analysis of the facts of the case to make its custody decision,' there is no clear abuse of discretion." *Marriage of McKenna*, ¶ 19.

¶17 *Whether the District Court erred by not making a specific finding that unsupervised visitation with Mary would "endanger" the children.*

¶18 Section 40-4-212(1)(l), MCA, includes among the factors that are in the best interest of the child:

> whether the child has frequent and continuing contact with both parents, which is considered to be in the child's best interests unless the court determines, after a hearing, that contact with a parent would be detrimental to the child's best interests. In making that determination, the court shall consider evidence of physical abuse or threat of physical abuse by one parent against the other parent or the child, including but not limited to whether a parent or other person residing in that parent's household has been convicted of any of the crimes enumerated in 40-4-219(8)(b).

As noted above, this Court has repeatedly stated that specific findings are not required for parenting decisions as long as the court has considered the factors in § 40-4-212, MCA. *See Marriage of McKenna*, ¶ 15. The District Court considered reports from FCS and testimony from both Mary and Randy at a hearing on October 17, 2006. The court's

6

October 24, 2006, order adopted the recommendations of FCS, including supervised visits for Mary. Multiple FCS reports indicated that unsupervised contact with Mary could be detrimental to the children's best interests. The District Court had substantial credible evidence that Mary's erratic behavior and refusal to work with those who disagreed with her medical assessments were detrimental to the children. We conclude that the District Court did not abuse its discretion in adopting the recommendations of FCS regarding supervised visitation.

¶19 *Whether the District Court equitably divided the marital estate, including child support obligations.*

¶20 The District Court made comprehensive findings regarding the reasonable and equitable distribution of the marital estate. The court determined that Randy would owe Mary additional money to affect mathematical equality, and offset this amount against Mary's initial child support obligations in order to allow her time to reenter the work force productively. We conclude that the District Court did not abuse its discretion in this equitable division of the marital estate, nor does such a distribution result in substantial injustice.

¶21 We review the District Court's child support conclusions separately. In *In re Marriage of Gebhardt*, we reversed the trial court's imputation of $40,000 annual income to the father "based solely on [his] testimony that he supposed his salary would have doubled had he remained in California and the speculation of [the father's] former co-worker that [the father] could probably find a job in the aerospace industry." 240 Mont. 165, 171, 783 P.2d 400, 404 (1989). As we noted:

7

> The court imputed $40,000 of income to LeRoy based only on his conjecture that had he remained in California, his salary might have doubled. Obviously, LeRoy did not remain in California. The findings of the trial court "[m]ust realistically reflect what the parents are capable of earning using their actual earnings as a guideline."

*Marriage of Gebhardt*, 240 Mont. at 172, 783 P.2d at 404 (citation omitted). In *Marriage of Gebhardt*, we remanded for a calculation of both parties' child support obligations based on a reasonable imputation of income after concluding that "due to the lack of sufficient supporting evidence" neither parties' earning capacity was realistically reflected in the district court's findings. 240 Mont. at 172, 783 P.2d at 404.

¶22 Here the District Court imputed a $52,000 annual income to Mary based on Randy's testimony that Mary told him she could earn that much. The record reveals no examination of the fact that Mary had not worked for nearly a decade and would not have current skills as a nurse. The record contains no evidence as to what nurses with two-year degrees actually earn in Montana. While we appreciate the difficulties facing the District Court in light of Mary's consistent lack of participation, we nonetheless conclude that the record lacks sufficient supporting evidence for Mary's imputed income. We therefore hold that the District Court abused its discretion and remand for a recalculation of child support obligations based on a reasonable imputation of income as required in *Marriage of Gebhardt*.

¶23 Affirmed in part and remanded for recalculation of child support obligations.

/S/ MIKE McGRATH

We concur:

/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART
/S/ JOHN WARNER
/S/ BRIAN MORRIS

8