Justice Dirk Sandefur delivered the Opinion of the Court.
***265 ¶1 Jennifer Ruth Bessette (Mother) appeals pro se the judgment of the Montana Eleventh Judicial District Court, Flathead County temporarily suspending a previously imposed parenting plan for the minor child, L.G.B. We affirm.
¶2 We restate the dispositive issues as:
1. Whether the District Court erroneously granted and maintained a temporary emergency order pursuant to § 40-4-220(2)(a)(ii), MCA, without an adequate showing and finding of changed circumstances under §§ 40-4-219(1) and -220(1), MCA ?
2. Whether the District Court abused its discretion when it limited Mother to supervised visitation?
3. Whether the District Court abused its discretion in denying Mother's request to refer the matter to Family Court Services in lieu of further involvement of the court-appointed guardian ad litem?
4. Whether the District Court abused its discretion in precluding admission of a psychological evaluation report authored by a non-testifying mental health professional?
***266 FACTUAL AND PROCEDURAL BACKGROUND
¶3 On November 4, 2015, Chad Bessette (Father) filed a petition for dissolution of his marriage to Mother and for imposition of a court-ordered parenting plan for their minor child, L.G.B., then six years old. After Mother timely responded and litigation ensued for over a year, the parties eventually stipulated to a final parenting plan. On December 6, 2016, the District Court approved and imposed the stipulated plan as a final parenting plan.[1] The plan provided that, from March through November of each year, the child would reside in Father's custody and care from Thursday evening to Friday evening, and alternating weekends. From November through March, the child would reside in Father's custody and care from Wednesday evening to Friday afternoon, and on alternating weekends. The child would be in Mother's custody and care at all other times.
¶4 On June 12, 2017, Mother filed a motion to amend the final parenting plan supported by affidavit and a proposed amended parenting plan. Based on an incident of domestic violence at Father's home in the presence of the child, Father subsequently applied for and obtained a temporary order of protection *897 against Mother.[2] On August 8th, the District Court denied Mother's motion for an amended final parenting plan and set all remaining issues for bench trial. On September 8th, 2017, Mother filed a motion for appointment of a limited-scope guardian ad litem (GAL) to assess the parenting dispute and make recommendations to the court regarding what contact Mother should ultimately have with the child in light of recent developments. On September 15th, the court granted Mother's motion and appointed Christina Larsen, Esq., as a limited-scope GAL for L.G.B.
¶5 On November 29, 2017, the parties participated in a twelve-hour settlement conference encompassing a wide-range of parenting plan, temporary protective order, and marital estate distribution issues still outstanding. As a result, the parties entered into stipulated parenting ***267 plan and marital estate distribution agreements. On December 1, 2017, the District Court adopted and imposed the parties' now-second stipulated parenting plan as their amended final parenting plan. The plan essentially placed L.G.B. in the primary custody and care of Father subject to a three-phase graduated transition schedule designed to incrementally increase Mother's parenting time upon demonstration of stable and appropriate parenting conduct. Under Phase 1, for two weeks, Mother would have specified day visitation on Saturdays or Sundays and after-school visits on Wednesdays. Under Phase 2, for three weeks, Mother would have the child overnight from Saturday at 8:00 AM to Sunday at 6:00 PM. Under Phase 3, for four weeks, Mother would have specified parenting time on alternating weekends. Upon the completion of the phased transitional schedule, the parties would have equal parenting time on a specified alternating schedule. The stipulated plan provided that the previously appointed GAL (Larsen) would oversee the transitional phases of the plan and monitor the child's adjustment to Mother through the first month of the plan. The parenting plan further superseded the prior temporary protective order as to the child and provided that parenting exchanges would be an exception to the continuing protective order between Father and Mother.
¶6 On December 13, 2017, only two weeks into the phased transition schedule, an incident occurred at the parking lot of Pick's Bowling Alley in Bigfork, Montana, where Mother and Father had arranged to meet to exchange the child. According to Father, he drove to the Bowling Alley, accompanied by his girlfriend, and waited for Mother to arrive with the child. Upon arriving with the child and seeing Father's girlfriend, Mother rapidly accelerated toward Father's car, stopping abruptly approximately two feet short of where Father was standing next to the car. Mother then angrily got out and repeatedly screamed "you shouldn't bring that bitch here." The child then became upset, yelling at Mother to "stop fighting." According to Mother's version of the events, she merely "parked very close" to Father's car "because it was icy and snowy and [she] didn't want [the child] to have to walk across the lot and slip on the ice." Mother acknowledged that her "reaction could have been better."
¶7 On December 15, 2017, Father filed a motion "for ex parte interim relief" and a subsequent show cause hearing. The motion requested immediate suspension of the parties' then-governing amended parenting plan to bar Mother from having unsupervised contact with the child. The motion further requested that the court reauthorize the court-appointed GAL to investigate and make further recommendation ***268 as to what contact Mother should have with the child. Father characterized the relief sought as "ex parte interim relief" but did not expressly seek modification of the parties' then-governing final parenting plan. The District Court issued Father's proposed ex parte order and set a show cause hearing for January 3, 2018.
¶8 At the show cause hearing, the court heard testimony from various witnesses regarding the circumstances of the bowling alley incident and the damaging effect on the child of Mother's continued belligerent behavior *898 toward Father. Testifying on behalf of the child and based on consultation with the child's therapist, Mother's therapist, and interviews of the child and Father, the GAL testified that the child continued to be traumatized and scared by Mother's uncontrolled anger and rage toward Father. The GAL testified that Mother's behavior had not improved under the amended parenting plan to date and thus recommended that the court order her to complete anger management counseling to help control her emotions. The GAL further recommended that, in the interim, the court should limit Mother's contact with the child to supervised visitation.
¶9 Mother acknowledged that her behavior could have been better but asserted that there had been no change of circumstances sufficient to warrant modification of the parties' prior parenting plan. On the purported basis of eliminating the continuing cost of the GAL, Mother further requested that the court relieve the GAL and refer the matter to the Eleventh Judicial District Family Court Services program for further monitoring.
¶10 Finding it necessary in the best interests of the child, the District Court orally ordered: (1) continued suspension of the prior parenting plan; (2) that Mother complete 40 hours of anger management counseling; (3) that Mother have only supervised visitation pending reinstatement of the parenting plan; and (4) that, upon approval from the GAL, the child's counselor, and the anger management counselor, the prior parenting plan would be reinstated and restarted under its phased transition schedule. Inter alia , the District Court explained that, "rather than a change in circumstances," the bowling alley incident "was just a continuation of what had been going on before ... it's the same old stuff ... so I'm going to suspend the parenting plan" with the "hop[e] that within ... a year from now it will be going full tilt 50/50."
¶11 On the stated ground that any such referral "probably should have been done a year or two ago [a]nd I ... hate to reinvent the wheel at this stage," the court orally denied Mother's motion to refer the matter to Family Court Services in lieu of further involvement of the GAL.
***269 ¶12 The Court subsequently issued written findings of fact, conclusions of law, and judgment formalizing its oral ruling at hearing. With reference to the parties' previously imposed parenting plan, the District Court's written judgment stated, inter alia :
[1] Pursuant to M.C.A. § 40-4-220(2)(ii), the [c]ourt has the authority to grant a temporary order providing for living arrangements for the child ex parte as an emergency situation has arisen in the child's present environment that endangers the child's physical, mental, and emotional health and an immediate change is necessary to protect the child.
[2] The [prior amended parenting plan] was [previously] approved as an Order of the Court.... However, it is in the child's best interest under ... M.C.A. § 40-4-212 that the [prior parenting plan] is suspended until such time as....
The written judgment ultimately ordered that the parties' prior amended parenting plan "is hereby SUSPENDED" pending satisfaction of the specified conditions of reinstatement. Mother timely appeals.
STANDARD OF REVIEW
¶13 District courts have broad discretion to make and modify parenting plan determinations under the applicable standards of §§ 40-4-212, -219, and -220, MCA. In re C.J ., 2016 MT 93, ¶ 13, 383 Mont. 197, 369 P.3d 1028. We review parenting plan determinations and modifications for a clear abuse of discretion. C.J ., ¶ 13 ; Jacobsen v. Thomas , 2006 MT 212, ¶ 13, 333 Mont. 323, 142 P.3d 859. We review evidentiary rulings for an abuse of discretion but subject to de novo review of related questions or applications of law. State v. Frey , 2018 MT 238, ¶ 12, 393 Mont. 59, 427 P.3d 86 ; Puccinelli v. Puccinelli , 2012 MT 46, ¶ 12, 364 Mont. 235, 272 P.3d 117. An abuse of discretion occurs if a court exercises granted discretion based on a clearly erroneous finding of fact, an erroneous conclusion or application of law, or otherwise "acts arbitrarily, without employment of conscientious judgment, or exceeds the bounds of reason resulting in substantial injustice."
*899 In re D.E. , 2018 MT 196, ¶ 21, 392 Mont. 297, 423 P.3d 586. A finding of fact is clearly erroneous only if not supported by substantial evidence, the court misapprehended the effect of the evidence, or, based on our review of the record, we have a definite and firm conviction that the lower court was mistaken. D.E. , ¶ 21. We review conclusions of law de novo for correctness. D.E. , ¶ 21.
***270 DISCUSSION
¶14 1. Whether the District Court erroneously granted and maintained a temporary emergency order pursuant to § 40-4-220(2)(a)(ii), MCA, without an adequate showing and finding of changed circumstances under §§ 40-4-219(1) and -220(1), MCA ?
¶15 Regardless of the District Court's characterization of it as a mere temporary "suspension" of the prior parenting plan, Mother characterizes the relief granted as a modification or amendment of a prior parenting plan subject to the requirements of § 40-4-219(1), MCA. Based on the court's characterization of her conduct as "a continuation of" the "same old stuff" that "had been going on before" rather than "a change in circumstances," Mother essentially asserts that the court either erroneously modified the prior parenting plain without a sufficient finding of changed circumstances or, alternatively, erroneously suspended the parenting plan pursuant to § 40-4-220(2)(a)(ii), MCA, independent of § 40-4-219(1), MCA. In response, Father essentially asserts that the relief granted was not a modification of a prior parenting plan but merely a temporary suspension of the existing parenting plan independently authorized under § 40-4-220(2)(a)(ii), MCA, without regard for the requirements of § 40-4-219(1), MCA.
¶16 In its discretion, a district court may amend or modify a previously imposed parenting plan only upon finding that (1) a change in the circumstances of the child exists based on "facts that have arisen since the prior plan or that were unknown to the court at the time of entry of the prior plan"; and (2) amendment or modification is "necessary to serve the best interest of the child" based on consideration of the relevant criteria specified in §§ 40-4-212 and - 219(1), MCA. Section 40-4-219(1), MCA. For purposes of § 40-4-219(1), MCA, a prior parenting plan is a court-ordered parenting plan constituting a final judgment of the court in a parenting proceeding. See § 40-4-219(7), MCA ; In re Marriage of Hedges , 2002 MT 204, ¶ 18, 311 Mont. 230, 53 P.3d 1273 (distinguishing final parenting plans from "interim" or "temporary" parenting plans); In re Marriage of Allen , 237 Mont. 64, 68, 771 P.2d 578, 580 (1989) (limited purpose of interim or temporary parenting plans authorized by § 40-4-213, MCA (interim parenting plans) is to provide for "temporary custody pending [final] resolution of the action" (original emphasis)). See also §§ 40-4-219(1), -233(1), -234(1), -213(4), MCA (distinguishing "amended parenting plan" from "prior plan," mandating incorporation of "final parenting plan" into "any final decree or amended decree" in "every dissolution proceeding" or "parenting plan proceeding," and providing that ***271 "[a]doption of a final parenting plan under 40-4-234 vacates any interim parenting plan adopted under" § 40-4-213, MCA ).
¶17 At present, Title 40, chapter 4, part 1, MCA, provides for only three types of parenting plans-initial parenting plans, amended parenting plans, and temporary interim parenting plans incident to a previously or concurrently filed request for an initial or amended parenting plan. See §§ 40-4-211(1), -212, -213, -219, -220, MCA ; In re Marriage of Kovash , 260 Mont. 44, 50, 858 P.2d 351, 355 (1993) ("[t]emporary child custody" order under § 40-4-213, MCA, "is merely an initial determination made" for temporary custody "until such time as full hearing ... may be" had-showing of changed circumstances under § 40-4-219, MCA, not required for final parenting plan superseding interim parenting plan imposed incident to initial parenting plan determination).
¶18 A party seeking amendment or modification of a prior parenting plan must file a motion for amendment supported by an affidavit showing of the alleged change in circumstances and necessity for modification specified in § 40-4-219(1), MCA.
*900 Sections 40-4-219(1), -220(1), MCA. If the motion and supporting affidavits are "adequate" to establish cause for modification under both requirements of § 40-4-219(1), MCA, the court must then set a duly noticed show cause hearing on the merits. Section 40-4-220(1), MCA. If not, the court "shall deny the motion." Section 40-4-220(1), MCA.[3]
¶19 Within this framework, the party seeking amendment may also seek an ex parte interim order for "temporary living arrangements for the child." Section 40-4-220(2)(a)(i), MCA. In addition to the affidavit showing required by §§ 40-4-219(1) and -220(1), MCA, the motion must be further supported by an additional affidavit showing that "an emergency situation has arisen ... endanger[ing] the child's physical, mental, or emotional health" and that "an immediate" parenting plan change "is necessary to protect the child" pending further proceedings. Section 40-4-220(2)(a)(ii), MCA. If the ex parte affidavit showing is sufficient to establish a prima facie showing of an emergency situation endangering the child and a resulting need for immediate protection as required by § 40-4-220(2)(a)(ii), MCA, then the ***272 court "shall" issue an order granting the requested temporary parenting plan and then "require all parties to appear" before the court "within 21 days from the execution of the interim parenting plan" and "show cause ... why the interim parenting plan should not remain in effect until further order of court." Section 40-4-220(2)(b), MCA.[4] The moving party has a "heavy burden" of proving entitlement to relief under §§ 40-4-219(1), -220(1), and -220(2)(a)(ii), MCA. In re R.J.N. , 2017 MT 249, ¶ 9, 389 Mont. 68, 403 P.3d 675. The exacting procedural and substantive requirements of those statutes "promote[ ] stability" for children and discourage "unnecessary litigation over parenting plans." R.J.N. , ¶ 12. In contrast to interim parenting plans issued pending an initial parenting plan determination, §§ 40-4-213(1) and -220(1)-(2), MCA, do not provide for an interim parenting plan incident to a requested amendment of a prior parenting plan except upon an affidavit showing of changed circumstances and an "emergency situation" endangering the child. See §§ 40-4-213(1), -220(1), (2)(a), MCA (interim parenting plan incident to request for initial parenting plan determination); compare §§ 40-4-213(1), -219(1), -220(1), (2)(b), MCA (interim parenting plan incident to request for amendment of prior parenting plan).
¶20 Citing In re Arneson-Nelson , 2001 MT 242, ¶¶ 33-34, 307 Mont. 60, 36 P.3d 874, Father asserts that § 40-4-220(2)(a)(ii), MCA, provides district courts authority to grant emergency relief temporarily overriding a prior parenting plan independent of and without an associated request for amendment under § 40-4-219(1), MCA. In Arneson , against the backdrop of a previously imposed final parenting plan, a mother filed a motion for a temporary ex parte order suspending the father's visitation rights under the prior parenting plan based on the alleged negative impact on the child of the father's belligerent behavior toward the mother. Arneson , ¶¶ 12-13. Finding good cause thereon, the district court issued an interim order temporarily suspending the father's parenting plan rights pending a hearing. Arneson , ¶ 13. Upon hearing, based on express findings that the father's hostile behavior was harmful to the child and that the best interests of the child required continued suspension of father's contact ***273 with the child, the court issued an order "supend[ing] all physical contact between" the father and child and limited the father's contact with the child "to phone calls, e-mail, and mail." Arneson , ¶¶ 14, 20. On appeal, father asserted that the district court erroneously modified his prior parenting plan *901 rights without finding the change in circumstances required by § 40-4-219(1), MCA. Arneson , ¶ 30. Though the district court did not make an express finding of a "change in circumstances," we reviewed the court's judgment under § 40-4-219(1), MCA, and ultimately held that the findings made by the court were sufficient to support and clearly imply the requisite finding of a change in circumstances. Arneson , ¶ 30. Arneson thus does not support the proposition that § 40-4-220(2)(a)(ii), MCA, authorizes district courts to temporarily suspend or deviate from a prior parenting plan absent the change of circumstances required by § 40-4-220(2)(a)(ii), MCA. By its terms in context of §§ 40-4-213, -219(1), and -220(1), MCA, § 40-4-220(2)(a)(ii), MCA, does not provide district courts authority to grant emergency relief temporarily overriding a prior parenting plan independent of and without an associated request for amendment under § 40-4-219(1), MCA.
¶21 Here, Mother correctly points out that the District Court characterized its order on hearing as a mere temporary "suspension" of the prior parenting plan subject to specified conditions for reinstatement. This characterization notwithstanding, the relief granted upon hearing, within the limited application of §§ 40-4-220(1) - (2), MCA, in regard to a previously imposed parenting plan, was in substantive effect an amendment or modification of a prior parenting plan subject to § 40-4-219(1), MCA. In that context, we agree with Mother that, in addition to not making a specific finding of a change in circumstances under § 40-4-219(1), MCA, the District Court further made a seemingly contrary statement from the bench-rather than "a change in circumstances," Mother's conduct was "a continuation of" the "same old stuff" that "had been going on before." However, we must view the court's oral statement in context of the hearing record and in light of the actual findings of fact and conclusions of law entered pursuant to M. R. Civ. P. 52(a).
¶22 The court's written findings of fact did not similarly state or manifestly imply that it found that no change in circumstances that had arisen since imposition of the prior parenting plan. Moreover, as in Arneson , the court's written findings clearly manifest a change in circumstances that would have supported an express finding under § 40-4-219(1), MCA. Under the terms of the prior parenting plan, Mother would either have had limited visitation as provided by the ***274 transition schedule or, upon satisfaction of the specified conditions precedent, shared custody with Father on a specified 50/50 basis. In either event, the prior parenting plan clearly contemplated that its structure and provisions would be sufficient to adequately protect the child under the then-contemplated circumstances. The terms of the parenting plan did not contemplate or provide for the nature and occurrence of Mother's subsequent behavior and the resulting need for additional protection of the child not provided under the prior parenting plan .
¶23 Moreover, despite its seemingly contrary comment from the bench, the District Court's written conclusions of law clearly manifest the court's awareness and understanding that, as a matter of law, emergency relief under § 40-4-220(2)(a)(ii), MCA, is available only in conjunction with a request for modification of a prior parenting plan pursuant to §§ 40-4-219(1) and -220(1), MCA. Even in the isolated context of the hearing record, the court's comment cannot be fairly viewed as an oral finding of fact. It occurred in the narrow context of the court compassionately explaining to Mother the necessity of the temporary modification and the built-in pathway for reinstatement of the prior plan. Thus, as in Arneson , the court's written findings of fact and conclusions of law manifestly imply a sufficient finding of a requisite change in circumstances under § 40-4-219(1), MCA. We hold that the District Court did not erroneously modify the parties' prior parenting plan without a sufficient finding of changed circumstances as required by § 40-4-219(1), MCA.
¶24 2. Whether the District Court abused its discretion when it limited Mother to supervised visitation? ?
¶25 Mother asserts that the District Court erroneously limited her custodial rights to supervised visitation without making *902 the requisite finding of fact under § 40-4-218(2), MCA. Subject to § 40-4-219(1), MCA, as applicable, a district court "shall determine [a] parenting plan in accordance with the best interest of the child." Section 40-4-212(1), MCA. In determining the best interest of the child, the court must "consider all relevant parenting factors" including, inter alia , "the interaction and interrelationship of the child with the child's parent or parents," "mental and physical health of all individuals involved," and "physical abuse or threat of physical abuse by one parent against the other parent or the child." Section 40-4-212(1)(c), (e)-(f), (2), MCA. Absent an agreement of the parties, a court "may order supervised visitation by the noncustodial parent," upon a finding that failure to do so would endanger the child's physical health or significantly impair the child's emotional development. Section 40-4-218(2), MCA. ***275 ¶26 We strongly recommend and caution that district courts should make specific findings on all relevant statutory criteria in making parenting plan determinations under Title 40, chapter 4, part 2, MCA. See In re Marriage of Woerner , 2014 MT 134, ¶ 15, 375 Mont. 153, 325 P.3d 1244. Nonetheless, under the doctrine of implied findings, we will not reverse a parenting plan determination for failure to make a specific finding if the express findings made were not clearly erroneous and were themselves sufficient, alone or in conjunction with other record evidence, to support and manifestly imply a more specific finding on the requisite statutory criteria. In re D.L.B. , 2017 MT 106, ¶¶ 13-14, 387 Mont. 323, 394 P.3d 169. Here, the District Court did not make a specific finding of fact on the criteria specified in § 40-4-218(2), MCA. However, regardless of other conflicting evidence, substantial record evidence supports the findings of fact made by the court. In context of its conclusions of law, the written findings made by the court were further manifestly sufficient to support and imply a finding that the failure to temporarily limit Mother to supervised visitation would likely significantly impair the child's emotional development under the circumstances-a circumstance and need not contemplated or provided for in the prior parenting plan. Apart from the court's failure to make a specific finding of fact under § 40-4-218(2), MCA, Mother has failed to demonstrate either that the findings made were clearly erroneous or that the court otherwise abused its discretion. We hold that the District Court did not erroneously limit Mother to supervised visitation without making a sufficient finding under § 40-4-218(2), MCA.
¶27 3. Whether the District Court abused its discretion in denying Mother's request to refer the matter to Family Court Services in lieu of further involvement of the court-appointed guardian ad litem?
¶28 The Eleventh Judicial District Court has long utilized a local Family Court Services (FCS) program to assist the court in determining and monitoring parenting plans. See Eleventh Jud. Dist. Local Rule 8(B) (June 2018);[5] In re Marriage of Wilson , 2009 MT 203, ¶ 16, 351 Mont. 204, 210 P.3d 170 ; In re Marriage of Hickey , 213 Mont. 38, 43-44, 689 P.2d 1222, 1225 (1984). Since superseded by a discretionary rule, the prior local rule, as applicable here without exception, unequivocally mandated that, "[u]pon request of either ***276 party, the [c]ourt shall " refer a subject child custody or visitation matter to FCS "for investigation, report and recommendation." Local Rule 22(D)(2) (superseded June 28, 2018) (emphasis added). Mother thus asserts that, regardless of its rationale, the District Court erroneously denied her motion for referral to FCS as then-required by local rule.
¶29 To the extent not in conflict with the Montana Constitution, statutes, or rules of this Court, district courts have power and discretion to adopt local rules of administration, practice, and procedure. Sections 3-1-112(1), 3-2-704, MCA ; M. R. Civ. P. 83. Duly-adopted local rules are generally "binding upon" the adopting court.
*903 McLaughlin v. Hart , 213 Mont. 216, 219, 690 P.2d 431, 433 (1984). However, contrary to Mother's characterization, this is not a case where a court simply disregarded its own local rule.
¶30 In September 2017, in the ongoing course of pre-judgment litigation prior to the initial parenting plan determination, the District Court granted Mother's uncontested motion for appointment of a limited-scope GAL to assess the parenting dispute and make recommendations regarding what contact Mother should ultimately have with the child. At that time, the parties stipulated to splitting the costs of the GAL's services. As an integral component, the stipulated and ultimately imposed parenting plan mandated that the previously appointed GAL would monitor Mother's progress and the child's welfare throughout the specified transition schedule. Mother did not object.
¶31 This chapter of the ongoing custody dispute arose after imposition of the parties' "final" parenting plan and prior to expiration of the stipulated period of court-ordered monitoring by the GAL. Under these unique circumstances, Mother waived her option of compelling referral to FCS pursuant to the since-superseded Local Rule 22(D)(2). We hold that the District Court did not erroneously fail to refer this matter to FCS in violation of the then-governing local rule.
¶32 4. Whether the District Court abused its discretion in precluding admission of a psychological evaluation report authored by a non-testifying mental health professional?
¶33 At the show cause hearing, Mother moved for admission of a presumably favorable written psychological evaluation report prepared by an examining mental health professional not called to testify. On Father's objection, the District Court denied admission of the report as ***277 inadmissible hearsay.[6] Mother proceeded to examine the court-appointed GAL about her knowledge of the substance of the report. The record manifests that the testimony elicited by Mother from the GAL was largely rank hearsay as defined and generally inadmissible under M. R. Evid. 801 - 02. Mother essentially asserts that Father's failure to object to the hearsay testimony subsequently elicited by Mother was a tacit, after-the-fact waiver of his prior successful objection. Mother thus puts the District Court in error for failing to retroactively admit the previously precluded evidence sua sponte .
¶34 No sale. Mother acknowledges on appeal that the evaluation report was inadmissible hearsay as defined by M. R. Evid. 801 - 02. However inconsistent or counterproductive, Father's failure to object to the subsequent admission of the subject hearsay through other means does not render the District Court in error for failing to retroactively admit the previously precluded evidence sua sponte . We hold that the District Court did not abuse its discretion in precluding admission of the subject psychological evaluation report.
CONCLUSION
¶35 We hold that the District Court did not erroneously grant and maintain a temporary emergency order pursuant to § 40-4-220(2)(a)(ii), MCA, without an adequate showing and finding of changed circumstances under §§ 40-4-219(1) and -220(1), MCA. We further hold that the District Court did not abuse its discretion in limiting Mother to supervised visitation, failing to refer this matter to a Family Court Services program pursuant to local rule, or precluding admission of a psychological evaluation report authored by a non-testifying mental health professional.
¶36 Affirmed.
We concur:
LAURIE McKINNON, J.
INGRID GUSTAFSON, J.
JAMES JEREMIAH SHEA, J.
JIM RICE, J.

The District Court apparently imposed the "final" parenting plan prior to entry of a final judgment dissolving the parties' marriage and adjudicating all other incidents of the marriage. See Order Approving Stipulated Final Parenting Plan , filed December 6, 2016.

As extended following hearing on August 23, 2017, the protective order referenced, inter alia , a then-pending Justice Court partner/family member assault prosecution against Mother and further barred Mother from having any contact with the child except as approved by the child's counselor.

In contrast, independent of § 40-4-219, MCA, parents may periodically seek review and modification of a prior parenting plan without proof of a "change in circumstances" if the prior plan expressly provides for such review. See § 40-4-234(2)(f), MCA (periodic review of parenting plan in re contemplated future need for review if provided for in prior parenting plan); In re S.W.B.S. , 2019 MT 1, ¶¶ 12-17, 394 Mont. 52, 432 P.3d 709.

If the ex parte affidavit showing is facially insufficient to constitute a prima facie showing under § 40-4-220(2)(a)(ii), MCA, nothing in § 40-4-220(2)(b), MCA, prevents a court, in its discretion, from conducting a hearing to determine whether, upon additional evidence, sufficient cause may yet exist to grant the relief under the standards of § 40-4-220(2)(a)(ii), MCA.

"In appropriate circumstances" in a domestic relations matter, "the [c]ourt may refer the matter to Family Court Services for investigation, report and recommendation regarding custody ... and visitation rights of each child and parent." Montana Eleventh Jud. Dist. Local Rule 8(B).

The court did not specifically sustain the objection but implicitly did so by not admitting it and, instead, specifically authorizing Mother to question the court-appointed GAL about her knowledge of the subject matter.