FILED

04/02/2025

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 24-0488

DA 24-0488

IN THE SUPREME COURT OF THE STATE OF MONTANA

2025 MT 69N

IN RE THE MARRIAGE OF:

ASHLEY MARIE DRUMHELLER,

Petitioner and Appellant,

and

JUSTIN THOMAS DRUMHELLER,

Respondent and Appellee.

APPEAL FROM:   District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DR 23-0818
Honorable Colette B. Davies, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Ashley Drumheller, Self-Represented, Billings, Montana

For Appellee:

Jill Deann LaRance, LaRance Law Firm, P.C., Billings, Montana

Submitted on Briefs:  March 12, 2025

Decided:  April 2, 2025

Filed:

_____
Clerk

Justice Katherine Bidegaray delivered the Opinion of the Court.

¶1      Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent.  Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2      The Appellant (Ashley) appeals pro se the July 19, 2024 Final Decree and Parenting Plan entered by the Thirteenth Judicial District Court, Yellowstone County, dissolving her marriage to the Appellee (Justin) and resolving matters of property division, child support, and custody of their two minor children.  Ashley contends the District Court erred by (1) failing to consider evidence of Justin's alleged parenting deficiencies and her own requests for maintenance because her counsel labored under a conflict of interest; and (2) adopting a final parenting plan that does not serve the children's best interests— particularly given the special medical needs of the parties' younger child.  Justin responds that (1) the District Court properly weighed the evidence; (2) both parents are capable caregivers; (3) the final parenting arrangement was within the court's discretion; and (4) no record evidence supports Ashley's conflict-of-interest claim.[1]  We affirm.

¶3      Ashley and Justin married on December 29, 2010, in Pennsylvania.  Over the course of their marriage, they lived in several states—including Texas, Maryland, Virginia, and California—due to Justin's service in the U.S. Navy.  In 2022, they moved to Billings,

---

[1] Justin also asks for attorney's fees or that we sanction Ashley for what he says is a "frivolous" pro se appeal.  We decline to grant either request.

Montana, seeking family support and a stable environment for their two children, H.D. (born October 2020) and Z.D. (born November 2022). Z.D. was born with bilateral clubfeet, requiring ongoing specialist care.

¶4 The parties separated at the end of July 2023. Ashley, who had been a stay-at-home parent, moved in with her parents and began full-time employment, while Justin remained in the marital home. An interim parenting arrangement was reached, affording Justin alternating weekends and midweek blocks, and requiring him to pay $1,500 in combined maintenance/child support pending a final calculation by the Child Support Services Division.

¶5 On June 24, 2024, the District Court conducted a one-day trial. At the beginning of trial, the parties notified the court that they had reached an agreement regarding property division—including that they would sell their marital home and use the proceeds first to pay off their credit card debt and then split the remainder. Because most of the credit card debt was Ashley's, the payoff was to be in lieu of spousal maintenance. Ashley and Justin each testified at trial and confirmed that they agreed to the property division as stipulated. Each also presented family-member testimony in support of their proposed parenting plans.

¶6 Here, Ashley asserts that her counsel failed to present evidence in support of her proposed parenting plan. Ashley also asserts that she asked her counsel to raise multiple concerns about Justin's driving, anger management, and the ongoing need for frequent medical appointments for Z.D., but that her counsel failed to do so. However, these issues were all raised at trial through Ashley's testimony. She further alleges counsel failed to pursue her request for spousal maintenance. Ashley discovered after trial that her attorney

3

had previously used Justin's counsel for personal legal matters, creating, in her view, an undisclosed conflict of interest.

¶7 Justin acknowledges that both children require consistent care and that Z.D. has special medical needs. However, he contends he is competent to handle these needs—pointing to his training as a Navy hospital corpsman—and that a step-up approach to shared custody best promotes the children's bond with each parent. He also disputes Ashley's allegations of anger issues and driving concerns, characterizing them as overstated or addressed at trial.

¶8 On July 19, 2024, the District Court entered its final decree and ordered the marital home to be sold, with net proceeds split equally after paying off certain credit card debt. It did not award spousal maintenance, reflecting the parties' agreement that the proceeds would pay off Ashley's larger share of the credit card debt in lieu of maintenance. As to parenting, the court established a plan transitioning to equal residential time, acknowledging the children's young ages but recognizing the statutory declaration that "frequent and continuing contact with both parents . . . is considered to be in the child's best interests unless the court determines, after a hearing, that contact with a parent would be detrimental to the child's best interests." Section 40-4-212(1)(l), MCA. Ashley appeals from this final decree.

¶9 We review a trial court's findings of fact for clear error and its conclusions of law for correctness. *Bessette v. Bessette*, 2019 MT 35, ¶ 13, 394 Mont. 262, 434 P.3d 894. A finding of fact is clearly erroneous if it is not supported by substantial evidence, if the court misapprehended the effect of the evidence, or if our review of the record leaves us firmly

4

convinced that the court made a mistake. *In re M.C.*, 2015 MT 57, ¶ 10, 378 Mont. 305, 343 P.3d 569. In matters of child custody and parenting plans, the court has broad discretion and will be reversed only upon a showing of a clear abuse of that discretion. *In re C.J.*, 2016 MT 93, ¶¶ 12-13, 383 Mont. 197, 369 P.3d 1028; *Bessette*, ¶ 13 (citing § 40-4-212, MCA (best-interest factors)). A court abuses its discretion if it acts arbitrarily or exceeds the bounds of reason. *Bessette*, ¶ 13. We defer to the trial court's judgment on witness credibility and the weight of the evidence presented. *In re Marriage of Bliss*, 2016 MT 51, ¶ 17, 382 Mont. 370, 367 P.3d 395.

### 1. Alleged Conflict of Interest and Right to a Fair Trial.

¶10 Citing *Legal Rights of Children* (Horowitz and Davidson (1984)), for the proposition that both parents and children have a fundamental interest in ensuring their voices are effectively heard, Ashley argues that her counsel's undisclosed prior representation by opposing counsel was a conflict of interest that compromised her right to a fair trial under the Sixth Amendment to the United States Constitution. She maintains that her counsel's failure to present key evidence stems from this conflict.

¶11 Although the Sixth Amendment right to counsel primarily applies in criminal proceedings, Ashley's broader claim is that she was denied a fair and impartial hearing due to her attorney's alleged divided loyalties. Generally, a party raising a conflict-of-interest claim must show actual prejudice—i.e., specific instances in which counsel's conflict caused the counsel to forego or inadequately pursue material evidence or arguments. *See Longjaw v. State*, 2012 MT 243, ¶¶ 14-15, 366 Mont. 472, 288 P.3d 210. While Ashley insists that she repeatedly asked counsel to introduce certain evidence and seek

maintenance, the record does not demonstrate that the court itself refused any proffered exhibits or testimony. The "evidence" Ashley presumably alleges counsel failed to introduce includes copies of support checks Justin paid under the interim parenting plan, insurance statements, photos of the children's injuries, texts between the parties, and Ashley's daily journal of her interactions with Justin. However, Ashley, Justin, and their family-member witnesses all testified regarding these subjects, and the court admitted the photos into evidence.

¶12 Further, although Ashley states she discovered only after trial that her attorney had used Justin's counsel for personal legal matters, she provides no record-based detail on how that arrangement concretely undermined her representation. Dissatisfaction with the scope or strategy of counsel's presentation, absent evidence of actual misconduct or prejudice, does not typically warrant setting aside a final decree. *See In re Kessler*, 2018 MT 231, ¶¶ 29-30, 392 Mont. 540, 427 P.3d 77 (no right to effective assistance of counsel in a "custody dispute between private parties"). Therefore, on this record, we cannot conclude the District Court's proceedings were fundamentally unfair or that any conflict precluded Ashley from introducing evidence.

## 2. Parenting Plan and the Children's Best Interests.

¶13 Ashley next challenges the District Court's parenting plan, which transitions to equal residential time. She urges this Court to adopt the "Tender Years Doctrine," citing *Helms v. Franciscus*, 2 Bland 544 (Md. Ch. 1830) (generally recognized as the origin of

the presumption),[2] and to recognize that her role as the primary caregiver—particularly for a child with special medical needs—should weigh more heavily. She also references *Legal Rights of Children*, contending that the "legal custodian" must be a parent consistently capable of making critical medical decisions.

¶14 Montana courts have long ago moved away from the Tender Years Doctrine, replacing any maternal presumption with a neutral "best interest of the child" standard embodied in § 40-4-212, MCA. In *Markegard v. Markegard*, 189 Mont. 374, 376-77, 616 P.2d 323, 324-25 (1980), this Court acknowledged that Title 40, chapter 4, MCA, and related case law require trial courts to consider each parent's ability to meet the child's needs, without applying a blanket presumption favoring one parent solely because the child is of "tender years." *See also Czapranski v. Czapranski*, 2003 MT 14, ¶ 22, 314 Mont. 55, 63 P.3d 499. Montana courts no longer apply the Tender Years Doctrine as a dispositive rule. *Czapranski*, ¶ 22. Rather, we apply the best-interest factors outlined in § 40-4-212, MCA, which focus on continuity, stability, each parent's capacity to meet the child's needs, and frequent and continuing contact with both parents, among other considerations. The District Court explicitly found that both parties are loving and attentive caregivers, that Ashley has historically taken the children to medical appointments, and that Justin is likewise competent to do so. The court further noted that Justin's role as a Navy recruiter, while sometimes demanding, does not inherently preclude him from effectively parenting.

---

[2] Robb Strom, *Tender Years Presumption: Is It Presumably Unconstitutional*, 21 San Diego L. Rev. 861, 861 (1984).

¶15 The District Court reasoned that frequent and continuing contact with both parents would serve these children well, especially as they grow older. *See* § 40-4-212, MCA (requiring consideration of each parent's capacity to meet day-to-day needs and the importance of stability). Although Z.D.'s medical needs require specialist visits, the court observed that both parents could coordinate to ensure she receives proper treatment. The plan's gradual transition to a 50/50 schedule allows the children time to adjust while maintaining strong bonds with each parent.

¶16 Given the District Court's broad discretion and its express findings that Justin and Ashley are each able to provide a safe, loving environment, we conclude the court did not abuse its discretion in adopting a "step-up" parenting schedule that ultimately becomes an equal parenting schedule. While Ashley's preference for a more limited schedule for Justin is understandable, we find no clear error in the District Court's determination that a shared parenting plan is in the children's best interests.

### 3. Property Division and Maintenance.

¶17 Ashley also alleges the District Court ignored evidence that Justin sold a vehicle—one of the parties' significant assets—and deposited the proceeds in a separate account without transparency. She further contends she wanted to pursue spousal maintenance, but her counsel refused to raise the issue, effectively silencing her claim.

¶18 The record indicates that the parties agreed to sell the marital home and divide net proceeds equally after paying off credit card debt. Each retains his or her own vehicle, bank accounts, and retirement accounts, with Justin's thrift savings plan split 50/50. The court heard testimony that the vehicle-sale proceeds were used in part for interim expenses

8

and monthly support. Nothing before us shows the District Court erred in crediting that testimony or concluding the property division was equitable overall.

¶19 Regarding maintenance, Ashley states she did request it informally, but her attorney "didn't listen." The District Court's final decree reflects that counsel for both parties ultimately agreed no maintenance was to be awarded. Ashley also stipulated at trial that she agreed to the division of marital property as stated by counsel on the record—including that she was to have her larger share of the credit card debt paid off in lieu of spousal maintenance. *See In re Killpack*, 2004 MT 55, ¶ 13, 320 Mont. 186, 87 P.3d 393 (we hold parties to stipulations made in open court). While Ashley may disagree with that decision after the fact, the decree does not reveal a formal motion or argument for maintenance at trial. Absent a properly preserved request, and given the parties' in-court stipulations, the District Court did not err in declining to award spousal support sua sponte.

¶20 After reviewing the record and the parties' briefs, we find no basis to conclude that Ashley's counsel's alleged conflict of interest rendered the proceedings unfair. Nor do we find that the District Court erred in fashioning a parenting plan under § 40-4-212, MCA, or in dividing the marital property. The court weighed the evidence, recognized each parent's ability to care for the children, and structured a step-up schedule to ensure both parents maintain significant relationships with the children. We therefore affirm the District Court's July 19, 2024 Final Decree and Parenting Plan in its entirety.

¶21 We decide this case by memorandum opinion pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules. In the opinion of the Court, the case presents a question

controlled by settled law or by the clear application of applicable standards of review.

Affirmed.

/S/ KATHERINE M BIDEGARAY

We Concur:

/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ INGRID GUSTAFSON
/S/ JIM RICE