No. 01-614

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 103

IN RE THE MATTER OF

JOHN CALVIN SCHILLER,

      Petitioner and Appellant,

   v.

AMIE JO SCHILLER,

      Respondent and Respondent.

APPEAL FROM:    District Court of the Eighteenth Judicial District,
                  In and For the County of Gallatin,
                  Honorable Mark L. Guenther, Judge Presiding

COUNSEL OF RECORD:

      For Appellant:

          Edward J. Guza, Drysdale, McLean & Guza, Bozeman, Montana

      For Respondent:

          Phillip N. Carter, Attorney at Law, Sidney, Montana

                   Submitted on Briefs:  February 7, 2002

                           Decided:  May 16, 2002

Filed:

              _____
                      Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1   John Calvin Schiller appeals from the Eighteenth Judicial District Court's Amended Temporary Order of Protection.  We affirm.

¶2   We re-state the issues on appeal as follows:

¶3   (1) Did the District Court err in failing to issue findings of fact and conclusions of law?

¶4   (2)  Did the District Court err in amending the temporary order of protection?

¶5   (3) Did the District Court err in refusing to hear evidence of domestic violence preceding the parties' marriage?

### FACTUAL AND PROCEDURAL BACKGROUND

¶6   John Calvin Schiller (John) and Amie Jo Schiller (Amie) were married on September 19, 1998.  Their only child, Kyle, was born on April 6, 1999.  They reside in Belgrade, Montana.

¶7   On June 16, 2001, John and Amie went to a friend's wedding in Miles City.  They attended the reception together and then went to a bar in town with friends.  John and Amie were staying at John's parents' home in Miles City, and his parents took Kyle home earlier in the evening.  Both John and Amie consumed alcohol throughout the night.

¶8   After going into town, Amie wanted to leave, but John did not.  An argument ensued,  and John testified that Amie threatened to return home to Belgrade with Kyle.  Amie then left the bar and went to John's parents' home.  Around 4:30 a.m., one of the bridesmaids gave  John a ride home.  After visiting with the bridesmaid upon reaching his parents' home for, according to Amie, approximately

2

15-20 minutes, John entered the home and a further argument ensued. Amie testified that John pushed her and called her an "immature bitch." Amie admitted that she then hit John in the face twice and chipped his tooth. During this time, Kyle was asleep and did not witness the incident.

¶9 Three days later, John filed a petition for temporary order of protection for Kyle and himself in Gallatin County. He alleged that Amie assaulted and endangered him. He recounted the wedding incident and also alleged that Amie struck him with a closed fist before they were married. In addition, he alleged that, on a previous occasion, Amie "backhanded" Kyle so that he hit his head on a chair and, on another occasion, she said that Kyle drove her "so crazy most of the time [she] could just shoot him." John alleged that Amie stole prescription drugs from the pharmacy at which she worked, administered them to Kyle and offered them to others. The District Court granted John's petition and prohibited Amie from contacting both John and Kyle. John then filed a dissolution action in Gallatin County.

¶10 Pursuant to § 40-15-202(1), MCA, the District Court held a hearing on June 29, 2001, regarding the temporary order of protection. John testified regarding his allegations and denied pushing Amie and calling her names. On John's behalf, others testified that Amie had obtained or offered to obtain prescription medication for them. Amie admitted hitting John and increasing her Paxil dosage without a prescription, but she denied all of John's other allegations. She testified that she had prescriptions for

3

the antibiotics that she obtained and administered to Kyle. Amie's supervisor at the pharmacy testified that he did not believe that Amie had stolen drugs from the pharmacy. A letter he wrote prior to the hearing, which was admitted at the hearing, explained that the pharmacy permitted employees to obtain uncontrolled prescription drugs and pay for them later. Employees were required to record such transactions in a notebook. Amie's supervisor stated that she was "up to date" on her transactions.

¶11 After the hearing, the District Court issued an Amended Temporary Order of Protection (Amended Order) extending the temporary order of protection for six months as to John. Comment [COMMENT16]: Tr 141

¶12 The District Court did not find that Kyle was in substantial danger, and the Amended Order was not extended to Kyle. Rather, the District Court, recognizing that it was also the court in the parties' dissolution action, issued an Interim Child Support Order and Interim Parenting Plan providing that Kyle would primarily reside with Amie.

¶13 John appeals the court's Amended Temporary Order of Protection to the extent that it did not include Kyle.

DISCUSSION

¶14 (1) Did the District Court err in failing to issue findings of fact and conclusions of law?

¶15 John claims that the District Court erred in failing to enter findings of fact and conclusions of law pursuant to Rule 52(a), M.R.Civ.P. He argues that because there were no findings or conclusions, it is difficult to ascertain why the District Court

4

determined that Kyle was not in need of protection and whether this decision was erroneous. John requests the case be remanded to the District Court for findings of fact and conclusions of law. Amie contends that since the Amended Order expired on December 29, 2001, remand is unnecessary.

¶16 In all actions tried upon the facts without a jury, the District Court must find the facts specially and state separately its conclusions of law. It is sufficient if the findings of fact and conclusions of law are stated orally and recorded in open court following the close of the evidence. Rule 52(a), M.R.Civ.P.

¶17 Here, the District Court entered findings of fact and conclusions of law orally on the record at the close of the evidence. This is sufficient for purposes of our review. We hold that the District Court properly issued findings of fact and conclusions of law pursuant to Rule 52(a), M.R.Civ.P.

¶18 (2) Did the District Court err in amending the temporary order of protection?

¶19 At the close of evidence, the District Court stated that it was "not convinced that as a result of two and a half hours of hearing, that this is an ongoing physical problem between these two spouses." Concerning the parenting of Kyle, the court expressed that it did not hear any testimony indicating that Kyle was in substantial danger or unreasonably endangered by Amie's administration of prescribed antibiotics, and, instead, it stated that John and Amie had done a reasonably good job of raising Kyle.

5

¶20 In direct response to John's inquiry regarding physical and chemical abuse pursuant to § 40-4-212 (f), (l), MCA (physical abuse), and § 40-4-212(g), MCA (chemical abuse), the court stated that the testimony revealed that both parents had slapped Kyle, and this did not warrant removing Kyle from either of them. In the Interim Parenting Plan, the court restricted both parents from slapping or striking Kyle on the head. With respect to Amie's alleged drug abuse, the court found that John had presented no professional testimony substantiating this claim. The court found that there was no drug or alcohol abuse by either parent. The court ordered John and Amie to enroll in parenting classes.

¶21 John claims that the temporary order of protection matter was essentially a "parenting proceeding," and, as such, John faults the District Court for failing to consider the best interests of Kyle pursuant to § 40-4-212, MCA. In particular, John argues that the District Court erred in failing to consider the physical abuse by Amie against John and Amie's chemical abuse.

¶22 John compares this case to that of *Stoneman v. Drollinger*, 2000 MT 274, 302 Mont. 107, 14 P.3d 12. In *Stoneman*, the District Court found that the father had a history of violence and convictions for domestic abuse and that the children witnessed his violent behavior, yet it permitted unsupervised visitation. We reversed, stating that witnessing domestic violence has a profound impact on children whether or not they are physically harmed. *Stoneman*, ¶ 59.

6

¶23 Focusing on the hearing testimony, Amie argues that the District Court did not fail to ensure Kyle's best interests in this case. She insists the District Court properly judged the credibility of the witnesses in making its decision that there was no ongoing physical problem between John and Amie and that Kyle was not in danger of harm. She also points out that, unlike in *Stoneman*, there is no history of violence and alcohol abuse in this case.

¶24 The decision to continue, amend or make permanent an order of protection is for the District Court to determine, and we will not overturn its decision absent an abuse of discretion. The Court's standard of review for custody and visitation is whether substantial credible evidence supports the district court's judgment, and we will uphold the district court's findings and conclusions unless they clearly demonstrate an abuse of discretion. *Stoneman*, ¶ 53.

¶25 Upon a showing of good cause, a district court may continue, amend, or make permanent a temporary order of protection. Section 40-15-202(1), MCA. Contact with a minor may be restricted for an appropriate amount of time or permanently if the court finds that the minor was a victim of abuse, a witness to abuse, or endangered by the environment of abuse. Section 40-15-204(4), MCA.

¶26 We conclude that the District Court properly refused to restrict Amie's contact with Kyle in this case. Substantial credible evidence supports the District Court's determination that Kyle was not in substantial danger of harm or unreasonably

7

endangered by Amie. Kyle was not a victim of abuse, and there was no indication that he lived in an environment of abuse. In contrast to *Stoneman,* Kyle did not witness abuse between John and Amie.

¶27 We further conclude that the District Court properly considered Kyle's best interests under § 40-4-212, MCA, in fashioning the Interim Parenting Plan in this case. Despite John's contentions, the District Court considered the physical abuse between John and Amie as required by § 40-4-212(l), MCA. Substantial credible evidence supports the court's determination that there was not an ongoing physical abuse problem and that Kyle was not physically abused. Furthermore, a complete review of the record supports the District Court's conclusion that Amie was not chemically dependent pursuant to § 40-4-212(g), MCA. We hold that the District Court properly omitted Kyle from its Amended Order under §§ 40-15-202 and -204, MCA, and § 40-4-212, MCA.

¶28 (3) Did the District Court err in refusing to hear evidence of domestic violence preceding the parties' marriage?

¶29 At the hearing, John attempted to introduce evidence that Amie assaulted him prior to their marriage. Amie objected on relevance grounds. The court stated that it had some question as to the relevance of the incident, and John initiated no further questioning on this issue.

¶30 John argues that the District Court should have considered Amie's assault against John which occurred before their marriage. Citing § 40-15-102(6), MCA, John claims that the length of time

between the abusive incident and his application for an order of protection was irrelevant.

¶31  We agree that the incident of abuse preceding John and Amie's marriage was irrelevant as to Kyle.  At this point, Kyle was not born and, of course, did not witness the abuse.  We hold that the District Court did not err in refusing to hear evidence of domestic violence preceding the parties' marriage and Kyle's birth.

¶32  We affirm.

/S/ W. WILLIAM LEAPHART

We Concur:

/S/ KARLA M. GRAY
/S/ JIM REGNIER
/S/ TERRY N. TRIEWEILER
/S/ JIM RICE

9