FILED

08/27/2024

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 23-0425

DA 23-0425

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2024 MT 189

MARCUS COOK,

      Petitioner and Appellee,

  v.

KIM ELIZABETH BODINE,

      Respondent and Appellant.

| | |
|---|---|
| APPEAL FROM: | District Court of the Eighteenth Judicial District, In and For the County of Gallatin, Cause No. DR-23-378D Honorable Andrew Breuner, Presiding Judge |

COUNSEL OF RECORD:

      For Appellant:

      Matthew A. Dodd, Dodd Law Firm, P.C., Bozeman, Montana

      For Appellee:

      Rob Cameron, Jackson, Murdo & Grant, P.C., Helena, Montana

Submitted on Briefs: April 3, 2024

Decided: August 27, 2024

Filed:

_____
Clerk

Justice Dirk Sandefur delivered the Opinion of the Court.

¶1 Kim Elizabeth Bodine appeals the July 2023 judgment of the Montana Eighteenth Judicial District Court, Gallatin County, affirming the June 15, 2023 protective order issued against her by the Gallatin County Justice Court on the petition of Marcus Cook. We address the following restated issue:

> *Whether the Justice Court abused its discretion in issuing a 10-year protective order against Bodine under §§ 40-15-201 -202 and -204, MCA?*

We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2 On April 28, 2023, Cook petitioned for a temporary order of protection pursuant to § 40-15-201, MCA, based on assertions that Bodine, his former girlfriend, despite his demand that she never contact him again, had driven by and parked near his Bozeman home, walked around and onto his property, and entered his house uninvited, *inter alia*. Cook further alleged that based on this conduct, Bodine had been cited by Bozeman police for criminal trespass and arrested for stalking.[1] Pursuant to §§ 40-15-201(4) and -202(1), MCA, the Justice Court issued an ex parte immediate temporary protective order on May 1,

---

[1] "A petitioner may seek a temporary order of protection from a court" upon "sworn petition" stating "that the petitioner is in reasonable apprehension of bodily injury or is a victim of one of the offenses listed in § 40-15-102, has a relationship to the respondent if required by § 40-15-102, and is in danger of harm if the court does not issue a temporary order of protection immediately." Section 40-15-201(1), MCA. *See also* § 40-15-102(2)(a), MCA (a "victim of . . . stalking as defined in § 45-5-220" may file a petition for an order of protection "regardless" of his or her "relationship" to the alleged offender).

2

2023, setting hearing on the matter for May 18th. On Bodine's motion, the court continued the hearing until June 15, 2023.

¶3     There, Bodine appeared with counsel.[2]   Cook, appearing pro se, testified in conformance with his petition allegations that, *inter alia*:

- he and Bodine dated from August 2021 through July 2022;

- on February 5, 2023, he "instructed her to never contact [him] again" and "had Bozeman PD go over to talk to her about" Montana's privacy in communications statute, "hoping [it] would be enough to convince her . . . to leave [him] alone"; Bodine came to his home an hour later and would not leave until he threatened to call police;

- on February 8, 2023, he "walked out of [his] upstairs bedroom" and Bodine was "walking nonchalantly around [his] kitchen"; he called 9-1-1 and Bodine was later charged with criminal trespass;

- on March 3 and 5, 2023, he observed Bodine's vehicle driving past his house;

- on April 2, his neighbor called him to report Bodine had parked down the block and walked past his house; Cook called 9-1-1 and Bodine was later arrested and charged with stalking, obstruction, and resisting arrest;[3]

- sometime between April 11-22, his vehicle was keyed while parked in his driveway;

- he petitioned for and was granted a temporary protective order on May 1, 2023; Bodine was served with the order the day it issued; and

- at approximately 10:30 p.m. on May 6, 2023, his back porch surveillance camera captured the image of a woman he identified as Bodine 12 feet from his back door; Bodine was later arrested and charged with felony stalking.

---

[2] On the acknowledged basis that there were "three criminal cases pending" against her in Gallatin County, Bodine did not testify. She also waived continuance.

[3] As a condition of her release on bail, Bodine was to have "no contact" with Cook and "stay 300 feet away" from his person, residence, and workplace.

¶4     Cook also testified that the ordeal had significantly affected his personal and work life, to wit:

> I'm changing my routine.  I'm leaving my doors locked when I'm at my house.  I'm watching TV . . . with a sidearm.  I['m] driving through parking lots to make sure her vehicle is not there before I go into the grocery store.  I am anxious.  I'm scared of what she might do.  Every time this escalates . . . . and a higher authority tells her to leave me alone, she won't do it. . . .  I need this to be permanent.  I need this to be serious, so she'll understand that she needs to take this seriously and stay away from me.
>
> .    .    .
>
> In my home, my sanctuary, my castle, I don't feel safe there anymore.  There is a video of her in my backyard.  The feeling that I got when I saw that made me sick to my stomach.  I have changed my routine.  I am fearful for my life.  I am full of anxiety and stress.  And, this is leaking over into my professional life and . . . affecting that.  This needs to end.  I can't deal with this.  I want to move and I can't afford it.

Cook offered copies of the various citations/charging documents, accompanying officer affidavits, and a screenshot image from his back porch surveillance camera, *inter alia*, as documentary evidence in support of his testimony, without objection.

¶5     In response, Bodine sought to establish through cross-examination that Cook had "voluntarily" maintained contact with her since their breakup; there had been no contact between them since she came into his home on February 8, 2023; Bodine had reasons to be in the vicinity of Cook's home unrelated to her relationship with him; and Cook, a

4

Montana Highway Patrol Trooper with "ground fighting" experience and firearms training could not legitimately be fearful of Bodine.[4]

¶6    On cross, Cook conceded that he "was trying to continue a civil relationship" with Bodine post-breakup, up to the point that she contacted a woman he was currently seeing, "interrogated her about [their] relationship," and "completely freaked her out," which prompted him to cease all contact in early February 2023. Cook further testified that "multiple times" since July 2022, he or his guests discovered Bodine "outside of [his] house in the dark," "crouched down," and "hiding in the bushes." When asked by counsel whether he was aware that Bodine had "a friend" who lived "a short distance away" from his home or that Bodine's daughter also lived nearby, Cook answered he was not. Finally, Bodine presented an exhibit purporting to be a "ScramNet GPS" report prepared by Gallatin County court services to establish that Bodine, wearing a GPS ankle bracelet on May 6, 2023, was not in the vicinity of Cook's home at the time his surveillance camera captured the image of a woman on his back porch. Cook acknowledged that the report showed Bodine's "*Scram bracelet* was at her house" at 10:30 p.m. on May 6th, but the screenshot "evidence [also] suggest[ed] that *she* was in [his] backyard" at that time.[5] (Emphasis added.)

---

[4] Bodine perpetuates this theory on appeal by repeatedly characterizing Cook's petition allegations and hearing testimony that he was "fearful for [his] life" as "dramatic," "hyperbolic," and "incredible." That the victim protection laws of Montana apply equally to trained Montana State Troopers should really go without saying.

[5] The Justice Court stated concerns regarding Bodine's April 2023 bail order being ambiguous as to whether it required GPS monitoring as a condition of release, and how to interpret the purported

¶7 Bodine called one witness, her "friend" who lived near Cook's home. She testified that it "wouldn't be unusual" for Bodine to stop by and visit unannounced. However, on cross-examination by Cook, Bodine's friend admitted that Bodine had not been to her home once in either 2022 or 2023.[6]

¶8 At close of evidence, the Justice Court proceeded to render oral findings of fact and conclusions of law upon which it based its ultimate decision to continue the temporary order of protection for a 10-year term. The court issued a conforming protective order the same day restraining Bodine from contacting, "assaulting, threatening, abusing, harassing, following, or stalking" Cook and ordering her to remain at least 500 feet from his person, residence, and place of work, *inter alia*. The Gallatin County District Court later affirmed the June 15, 2023 protective order. Bodine timely appeals.

## STANDARD OF REVIEW

¶9 On appeal from a justice court of record, district courts function as intermediate appellate courts with review confined to the record and questions of law. Sections 3-5-303 and 3-10-115(1), MCA; *Stanley v. Lemire*, 2006 MT 304, ¶¶ 24-25, 334 Mont. 489, 148 P.3d 643. District courts accordingly review justice court of record findings of fact only for clear error, conclusions and applications of law de novo for correctness, and discretionary rulings for an abuse of discretion. *Stanley*, ¶ 25. On subsequent appeal from

---

"ScramNet" data without qualified witness foundation testimony authenticating and explaining the near-illegible report, but admitted the report nonetheless.

[6] Bodine presented no evidence that her daughter lived near Cook's home.

district court to this Court, we independently review the justice court findings of fact, conclusions and applications of law, and discretionary rulings under the same standards as if directly appealed here. *Stanley*, ¶ 26.

¶10 We will not overturn a lower court's decision "to continue, amend, or make permanent an order of protection absent an abuse of the court's discretion." *Edelen v. Bonamarte*, 2007 MT 138, ¶ 6, 337 Mont. 407, 162 P.3d 847. An abuse of discretion occurs if a lower court exercises lawful discretion based on a clearly erroneous finding of material fact, an erroneous conclusion or application of law, or otherwise acts arbitrarily, without conscientious judgment or in excess of the bounds of reason, resulting in substantial injustice. *In re Marriage of Bessette*, 2019 MT 35, ¶ 13, 394 Mont. 262, 434 P.3d 894.

**DISCUSSION**

¶11 *Whether the Justice Court abused its discretion in issuing a 10-year protective order against Bodine under §§ 40-15-201, -202 and -204, MCA?*

¶12 Bodine asserts that the Justice Court erroneously failed to identify "any findings of fact" or "credible" evidence in its "written Order of Protection" to support its conclusion that continued protection was necessary "to avoid further injury or harm." *See* §§ 40-15-201(2), -204(1), and (5), MCA (court "shall issue" temporary order of protection upon finding petitioner "in danger of harm" and, upon determination that "permanent protection" is necessary "to avoid further injury or harm," "may continue" a temporary protective order "for an appropriate time period" or order that it "remain in effect permanently"). M. R. Civ. P. 52 requires a court, "[i]n an action tried on the facts without a jury," to "find

7

the facts specially and state its conclusions of law separately." M. R. Civ. P. 52(a)(1). It is sufficient for a court to state its findings and conclusions orally "on the record" in open court "after the close of the evidence." M. R. Civ. P. 52(a)(1); *Schiller v. Schiller*, 2002 MT 103, ¶ 16, 309 Mont. 431, 47 P.3d 816. *See also Edelen*, ¶ 10 ("failure to state the findings of fact and conclusions of law in the recommended form does not constitute substantial error if the court's findings and conclusions are clear to this Court" on review). Here, the Justice Court articulated its rationale at length on the hearing record, to wit expressly finding and concluding that:

- "based off" the elements of the offense of stalking (§ 45-5-220, MCA), and Cook's testimony that he told Bodine "numerous times . . . not to contact him, or be within his house," and she was nonetheless "arrested for being in his kitchen" and for being within the "exclusionary zone," "there [was] an *obvious pattern of conduct*";

- GPS monitors are not "infallible," and based on Cook's law enforcement experience—especially identification training—Cook "recognize[d]" Bodine on the video surveillance footage and, "[t]hus, five days after the temporary order [was] issued . . . *Ms. Bodine was in [Cook's] backyard*" in violation of that order;

- Bodine's "pattern of conduct" showed "why [Cook was] *apprehensive*" and "*suffering substantial emotional distress*," and it was Bodine's *intent* "to do that"; and

- pursuant to § 40-15-204, MCA, "on the basis of the severity of the offense at issue, and the evidence presented at the hearing," a "permanent order of protection" was necessary "to avoid further injury or harm, which *the harm would be the emotional distress to the petitioner*." (Emphasis added.)

¶13 Notwithstanding the court's oral findings and conclusions, Bodine points to, *inter alia*, the lack of any record evidence that she ever threatened or harmed Cook physically or had any history of violence, or of any contact between them since she entered his home

8

on February 8, 2023, which she asserts undermined Cook's testimony. It is well-settled that, acting in its capacity as a finder-of-fact, the trial court's role is to assess the credibility of witnesses and the veracity of their testimony, including conflicting accounts. *See Boushie v. Windsor*, 2014 MT 153, ¶ 12, 375 Mont. 301, 328 P.3d 631; *In re Marriage of Bliss*, 2016 MT 51, ¶ 17, 382 Mont. 370, 367 P.3d 395. We will not "second guess" a lower court's "determination regarding the strength and weight to be given to conflicting testimony and will not re-weigh the evidence to determine whether it supports a different conclusion." *Lyndes v. Green*, 2014 MT 110, ¶ 25, 374 Mont. 510, 325 P.3d 1225; *In re Mental Health of W.K.*, 2020 MT 71, ¶ 24, 399 Mont. 337, 460 P.3d 917 (our role "is not to determine whether there was sufficient evidence to enable the lower court to reach a different conclusion, but simply to determine whether the conclusion that it did reach is supported by substantial evidence"—citation omitted). Here, the Justice Court expressly found Cook's testimony to be credible, including his identification testimony tending to prove that, despite purportedly contrary GPS monitoring data, Bodine was in fact on his porch on the evening of May 6, 2023, in blatant disregard of the court's May 1st temporary no-contact protective order. Further, rather than required findings for a "determin[ation] that[,] to avoid further injury or harm, the petitioner needs permanent protection," "the respondent's history of violence [and] the severity of the offense at issue" are *factors* a court may consider in deciding to end, extend, or make permanent a temporary order of protection pursuant to § 40-15-204, MCA. *See* § 40-15-204(1), MCA. As such, the absence of evidence of physical violence, or the respondent's propensity therefor, in a

particular case may not always be a determinative factor in the court's analysis, especially if "the offense at issue" is, as it was here, "stalking" as defined by § 45-5-220, MCA.[7]

**CONCLUSION**

¶14 Based on our review of the Justice Court's oral findings of fact and conclusions of law on the pertinent essential §§ 40-15-201 and -204, MCA, criteria, and its June 2023 written order of protection, we hold that the court did not erroneously conclude that further protection was necessary "to avoid further injury or harm," and thus did not abuse its discretion in issuing a continuing protective order in Cook's favor. As to Bodine's assertion that the 10-year duration of the order constituted further abuse of the court's discretion, we similarly hold that in light of record evidence indicating Bodine's escalating disregard for court-ordered no-contact—including conduct in blatant defiance of the April 3, 2023 conditions of her release on bail and the court's May 1, 2023, temporary order of protection—the Justice Court did not abuse its discretion in imposing the protective order for a period of 10 years.[8]

---

[7] *See* §§ 40-15-201(1), -102(2)(a), and 45-5-220(1), MCA (defining the offense of stalking as "purposely or knowingly engag[ing] in a course of conduct directed at a specific person" with knowledge that "the course of conduct would cause a reasonable person to . . . fear for the person's own safety" or "suffer other substantial emotional distress"). *See also* § 45-5-220(2)(a), MCA (defining "course of conduct" as "two or more acts, including but not limited to acts in which the offender directly or indirectly, by any action, method, communication, or physical or electronic devices or means, follows, monitors, observes, surveils, threatens, harasses, or intimidates a person or interferes with a person's property").

[8] While the Justice Court imposed the protective order for a period of 10 years, should Bodine believe she can establish that the protective order is no longer warranted, she is not precluded from seeking relief or modification of said order from the Justice Court at some point in the future.

¶15    Affirmed.


                                        /S/ DIRK M. SANDEFUR


We concur:

/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER
/S/ INGRID GUSTAFSON
/S/ JIM RICE