FILED

05/06/2025

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 24-0646

DA 24-0646

IN THE SUPREME COURT OF THE STATE OF MONTANA

2025 MT 91

TAYLOR KAI GROENKE,

      Plaintiff and Appellee,

  v.

RYAN DEAN GABRIEL,

      Defendant and Appellant.

APPEAL FROM:   District Court of the Eleventh Judicial District,
                  In and For the County of Flathead, Cause No. DR-24-510(B)
                  Honorable Robert B. Allison, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Ryan Dean Gabriel, Self Represented, Lakeside, Montana

      For Appellee:

          Kai Groenke, Law Office of Kai Groenke, P.C., Kalispell, Montana

                      Submitted on Briefs:  March 5, 2025

                                Decided:  May 6, 2025

Filed:

                               _____
                                        Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 Ryan Gabriel appeals an Eleventh Judicial District Court order affirming the Justice Court's order of protection in favor of Kai Groenke, an attorney for Gabriel's former partner. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2 In March 2022, Jesse Olsen filed a petition for dissolution of domestic partnership from Ryan Gabriel in Oregon. Gabriel then filed a partition action in Montana's Flathead County District Court, seeking to partition the couple's shared real property near Lakeside. Olsen hired Groenke, a Kalispell family law attorney, to contest the partition. Groenke filed a notice of appearance in the partition case in May 2023.

¶3 Gabriel, who represented himself in the case, began e-mailing Groenke in May 2023. In a series of e-mails over the next several months, he threatened to seek professional disciplinary action against her, including disbarment, and to sue her for tortious interference. He accused Groenke of "malignant vulnerable narcissism" and called her and Olsen's Oregon attorney "two deranged, bitter misanthropes who have no business scurrying around Oregon and Montana with law degrees."

¶4 In January 2024, Christopher Gillette—an attorney Olsen hired after Gabriel filed a lawsuit against him in federal district court—advised Groenke of e-mail communications he had received from Gabriel. In one, Gabriel wrote that he "would rather commit murder than succumb to forcibly conscripted marriage" and that "[a]nything that would prevent that will happen . . . [a]nything and everything." Gillette interpreted Gabriel's e-mails to be "thinly veiled threats of murder."

2

¶5     In June 2024, the Oregon trial court dissolved Gabriel and Olsen's domestic partnership and granted Olsen the authority to sell the couple's property near Lakeside.[1] Olsen hired realtor Fritz Groenke (Fritz)—Groenke's father—to list and market the property.  On July 15, 2024, after Fritz visited the Lakeside property, Gabriel left him a voicemail message stating, "If you step foot on my property again, I am going to shoot you in the face."  Gabriel sent Fritz a barrage of text messages, calling Groenke a "low-talent daughter" and writing that "[t]here seems to be a lot of undisclosed infidelity in the Groenke family genome."  Gabriel continued: "I think you can also safely assume that if I sue you for tortious interference, I can only win the damages I seek if you're alive.  So to the extent that you are now more valuable to me intact, no, I won't shoot you in the face."  The next day, Gabriel wrote Groenke: "Leave me alone and you will both be fine."

¶6     On July 19, 2024, Groenke obtained a temporary order of protection against Gabriel in Flathead County Justice Court.  The court limited Gabriel's communications with Groenke to brief discussions about the pending cases in which she was opposing counsel and he appeared pro se.  After the temporary order of protection issued, Gabriel continued to e-mail Groenke, Fritz, and Groenke's paralegal about unrelated matters.  On July 23, Gabriel wrote Groenke that he planned to submit "an ethics complaint with the Montana Dept. of Labor & Industry professional licenses unit, along with a Montana Bar Association ethics complaint against you personally."  Gabriel e-mailed Fritz and Groenke on August 3, alleging that Fritz committed numerous felonies and that Groenke too was implicated.  On

---

[1] Gabriel appealed the Oregon court's order and represents that the portion of the order authorizing sale of the Montana property was stayed pending resolution of the appeal.

3

August 6, Gabriel wrote Groenke's paralegal: "Your boss is a felon, and you need to document everything." On August 7, Gabriel e-mailed Groenke: "You are a felon."

¶7 On August 8, 2024, the Justice Court held a three-hour hearing to consider Groenke's request for a permanent order of protection. Olsen testified that Gabriel conducted "extensive" intimidation and harassment, including threats of violence and litigation, against Roscoe Nelson, Olsen's attorney in the Oregon domestic partnership dissolution matter. Olsen also said that Gabriel harassed Christopher Gillette, Olsen's attorney in the Montana federal district court lawsuit. Gabriel owns firearms in Oregon and Montana, Olsen testified, and is "absolutely" capable of violence. Fritz testified to Gabriel's voicemail threatening to "shoot [him] in the face" if Fritz came back to Gabriel's property and said that he believed Gabriel posed a threat to himself, his daughter, and their families.

¶8 David Dowell, Groenke's husband, said that in their ten years of marriage, family law cases have rarely affected her. He testified that Gabriel's conduct caused her increasing anxiety, stress, despair, and loss of sleep. Dowell drew on his twenty years of experience as a probation and parole officer to opine that Gabriel posed a risk to their family.

¶9 Groenke testified that she has been a family law attorney for eighteen years and has never experienced the level of harassment Gabriel inflicts on her. In addition to his more explicit threats, Groenke said that Gabriel uses thinly veiled threats to intimidate her, including that he is "researching" the Groenke family genealogy; that he knows she is

4

Fritz's illegitimate daughter; and that he researched her prior marriage. Groenke said that, without the ability to harass her through litigation, she did not "have any doubt that [Gabriel] would resort to violence." She took Gabriel's repeated, unrelated e-mails to her after entry of the temporary order of protection as indication that she needed a permanent order of protection. Groenke described her concern that she might see Gabriel in public:

> For the last month, every car that passes by my house I look at and I'm looking to see if it's a silver BMW. I'm wondering if he's rented a car or is in an uber. I'm looking over my shoulder constantly. My paralegal went to file stuff in the District Court and she was looking over her shoulder, wondering: Is Ryan Gabriel going to walk up behind me and recognize me and do something crazy?

Relying on her experience with domestic violence cases, Groenke testified that when people "who are in a position of power and control feel like they are losing power and control, that's when they become dangerous."

¶10 Gabriel testified that all of his communications with Groenke were in response to her deliberate provocations. Due to the numerous order of protection petitions filed against him, Gabriel asserted that he—not Groenke—is the victim of harassment. Gabriel also pointed to his lack of a criminal record as further indication that the order of protection was unwarranted. Gabriel said that Groenke's order of protection petition and Fritz's attempt to sell the Lakeside property would result in Groenke's disbarment. The true motivation behind Groenke's petition for order of protection, Gabriel maintained, was retribution for his making fun of her appearance. He summarized: "Bottom line is I think she's obsessed with herself and I think she's obsessed with other people's perception of her appearance. In that process . . . she's . . . launched this campaign to immiserate anyone who would dare

5

crack a joke at her expense." Gabriel argued that the "pivotal" issue for the court to decide was whether the Oregon trial court order was stayed when Fritz entered the Lakeside property. Gabriel did not call other witnesses.

¶11    Before pronouncing judgment, the Justice Court explained that it listened to three hours of testimony and reviewed the parties' voluminous exhibits. The court noted that the parties spent a significant amount of time discussing the Oregon case and Gabriel's contention that Fritz lacked legal authority to enter the Lakeside property. The court reasoned that this question was not relevant to the order of protection determination; rather, the court stated, "the actual question before me is an objective look at Mr. Gabriel's behavior." His behavior during the hearing, the court observed, was consistent with Groenke's allegations regarding his previous conduct, including "constantly belittling, attacking, [and] demeaning . . . Ms. Groenke in a way that is not reasonable." Referring to the statutory definition of stalking, the court found that Gabriel intended his behavior to cause Groenke emotional distress. The court concluded that a reasonable person in similar circumstances would experience substantial emotional distress if faced with Gabriel's conduct. Consequently, the court granted Groenke a ten-year order of protection against Gabriel.

¶12    Gabriel appealed the Justice Court's order of protection to the District Court. After reviewing "all aspects of [the] appeal," including the three-hour hearing, the District Court affirmed. Gabriel appeals.

6

**STANDARDS OF REVIEW**

¶13 "On appeal from a justice court of record, district courts function as intermediate appellate courts with review confined to the record and questions of law." *Cook v. Bodine*, 2024 MT 189, ¶ 9, 418 Mont. 49, 555 P.3d 236 (citing §§ 3-5-303 and 3-10-115(1), MCA) (citation omitted). District courts review a justice court's findings of fact for clear error, its conclusions of law for correctness, and discretionary rulings for an abuse of discretion. *Cook*, ¶ 9 (citation omitted). We examine the record independently and apply the same standards of review to the Justice Court's findings of fact, conclusions of law, and discretionary rulings. *Cook*, ¶ 9 (citation omitted).

¶14 "This Court will not overturn a . . . court's decision to continue, amend, or make permanent an order of protection absent an abuse of discretion." *Fritzler v. Bighorn*, 2024 MT 27, ¶ 7, 415 Mont. 165, 543 P.3d 571 (quoting *Boushie v. Windsor*, 2014 MT 153, ¶ 8, 375 Mont. 301, 328 P.3d 631). "The question under this standard is not whether we would have reached the same decision as the trial judge, but whether the trial judge acted arbitrarily without conscientious judgment or exceeded the bounds of reason." *Lockhead v. Lockhead*, 2013 MT 368, ¶ 12, 373 Mont. 120, 314 P.3d 915 (citation omitted).

**DISCUSSION**

¶15 A person may petition for an order of protection—regardless of the person's relationship to the respondent—if the person is a victim of stalking as defined in § 45-5-220, MCA. Section 40-15-102(2), MCA. Section 45-5-220(1), MCA, provides that

7

[a] person commits the offense of stalking if the person purposely or knowingly engages in a course of conduct directed at a specific person and knows or should know that the course of conduct would cause a reasonable person to: [] fear for the person's own safety or the safety of a third person; or [] suffer other substantial emotional distress.

The statute defines a "course of conduct" as

two or more acts, including but not limited to acts in which the offender directly or indirectly, by any action, method, communication, or physical or electronic devices or means, follows, monitors, observes, surveils, threatens, harasses, or intimidates a person or interferes with a person's property.

Section 45-5-220(2)(a), MCA.  A "reasonable person" is an objective standard defined as "a reasonable person under similar circumstances as the victim."  Section 45-4-220(2)(c), MCA.

¶16  Gabriel argues that the Justice Court incorrectly granted Groenke the order of protection because, due to the Oregon stay, Fritz did not have authority to list the Lakeside property for sale.  Groenke's purpose in seeking the order of protection, Gabriel insists, is to evict him from the Lakeside property so Fritz can sell it.  Gabriel further argues that Groenke intentionally provoked all of his communications with the explicit purpose of obtaining the order.  Gabriel reiterates his contentions that there is "widespread infidelity within the Groenke family"; that Groenke and her father run a conspiracy to entrap residents of the Flathead Valley; and that the Groenkes are implicated "in a wide range of probable criminal felony acts, including trespassing, ensnarement, racketeering, vandalism, and conspiracy to commit fraud, along with various conflicts of interest wherever their professional licenses are concerned."  In his reply brief, citing *Counterman v. Colorado*, Gabriel argues that the order of protection violates his free

8

speech rights under the First Amendment to the U.S. Constitution. *Counterman v. Colorado*, 600 U.S. 66, 143 S. Ct. 2106 (2023). Last, Gabriel broadly argues that the Justice Court misapprehended the effect of the evidence.

¶17 Groenke responds that the Justice Court correctly found Gabriel's conduct within the statutory requirements necessary to grant an order of protection. Groenke contends that since she began representing Olsen in May 2023, Gabriel conducted a "campaign to cause [her] as much mental, emotional, and financial harm as he could accomplish." The Justice Court's reliance on its observations of Gabriel's behavior during the hearing, Groenke argues, further convinced the court that an extended order of protection was necessary. Groenke maintains that Gabriel's threat to shoot Fritz in the face would cause a reasonable person to fear for the safety of another under § 45-5-220(1), MCA. Finally, Groenke argues that the Justice Court did not err in concluding that she had suffered substantial emotional distress as a result of Gabriel's conduct.

¶18 The Justice Court's distillation of the issue here is apt: "the actual question before [us] is an objective look at Mr. Gabriel's behavior." Whether the Oregon trial court judgment was stayed when Fritz entered the Lakeside property is irrelevant to the question before the Justice Court and to the resolution of this appeal. Instead, the inquiry is: Did Gabriel purposely or knowingly engage in a course of conduct that he knew or should have known would cause a reasonable person substantial emotional distress or cause the person to fear for their own safety or the safety of a third party? Section 45-5-220(1), MCA.

¶19 The evidence supports the Justice Court's finding that Gabriel harassed, intimidated, and threatened Groenke repeatedly beginning in May 2023, behavior that continued after the Justice Court granted a temporary order of protection in June 2024. In part, this conduct includes claiming that she will be disbarred; threatening to bring lawsuits against her personally; insulting her; insisting that there is "widespread infidelity" in the Groenke family; telling her paralegal that Groenke is a felon; threatening to shoot Groenke's father in the face; and stating that as long as Groenke and her father leave Gabriel alone, they "will both be fine." Gabriel's e-mails are two or more acts that threatened, harassed, or intimidated Groenke, which meets the "course of conduct" definition under § 45-5-220(2)(a), MCA.

¶20 Gabriel does not dispute that his conduct was purposeful or knowing. Section 45-5-220(1), MCA. Additionally, faced with Gabriel's threats and innumerable harassing e-mails, a reasonable person in similar circumstances would suffer substantial emotional distress. Section 45-4-220(2)(c), -220(1), MCA. Gabriel's conduct also would cause a reasonable person to fear for Fritz's safety. Section 45-4-220(2)(c), -220(1), MCA. The Justice Court did not act arbitrarily without conscientious judgment or exceed the bounds of reason when it concluded that Gabriel's course of conduct would cause a reasonable person substantial emotional distress and to fear for the safety of a third person. *Fritzler*, ¶ 7 (citation omitted); *Lockhead*, ¶ 12 (citation omitted).

¶21 Finally, an appellant "may not raise new issues in a reply brief." *Pengra v. State*, 2000 MT 291, ¶ 13, 302 Mont. 276, 14 P.3d 499 (citing M. R. App. P. 23(c) (now M. R.

App. P. 12(3)) (citation omitted). It follows that we "will not address the merits of an issue presented for the first time in a reply brief on appeal." *Pengra*, ¶ 13 (citation omitted). Gabriel raised his free speech argument and cited *Counterman v. Colorado* for the first time in his reply brief. We therefore decline to address it. *Pengra*, ¶ 13 (citation omitted).

¶22 The Justice Court did not abuse its discretion when it issued Groenke a ten-year order of protection against Gabriel, and the District Court did not err when it affirmed the order. *Fritzler*, ¶ 7 (citation omitted); *Lockhead*, ¶ 12 (citation omitted).

## CONCLUSION

¶23 The Justice Court's order of protection is affirmed.

/S/ BETH BAKER

We Concur:

/S/ CORY J. SWANSON
/S/ LAURIE McKINNON
/S/ INGRID GUSTAFSON
/S/ JIM RICE