FILED

10/14/2025

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 25-0220

DA 25-0220

IN THE SUPREME COURT OF THE STATE OF MONTANA

2025 MT 235N

BRANDIA WOOLDRIDGE,

      Petitioner and Appellee,

  v.

MICHAEL E. SPREADBURY,

      Respondent and Appellant.


APPEAL FROM:   District Court of the Third Judicial District,
               In and For the County of Powell, Cause No. DR 2025-08
               Honorable Jeffrey Dahood, Presiding Judge


COUNSEL OF RECORD:

      For Appellant:

          Michael E. Spreadbury, Self-Represented, Deer Lodge, Montana

      For Appellee:

          Brandia Wooldridge, Self-Represented, Deer Lodge, Montana


                       Submitted on Briefs:  September 17, 2025

                              Decided:  October 14, 2025


Filed:

                       _____
                                 Clerk

Justice James Jeremiah Shea delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion, shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Michael E. Spreadbury appeals from the Third Judicial District Court, Powell County's April 28, 2025 order affirming and continuing the Powell County Justice Court's order of protection against him until March 14, 2026. We affirm.

¶3 Brandia Wooldridge was a fulltime teacher at Powell County High School (PCHS) when Spreadbury came to PCHS as a substitute teacher. On Spreadbury's first day, he visited Wooldridge's classroom and misrepresented to her that the principal had sent him to observe her student management. Spreadbury saw Wooldridge's publicly posted email address as he left the classroom. The next day, Wooldridge received an email from Spreadbury that she considered sexually explicit, and she forwarded it to the PCHS principal, Katie Crofutt. As a result, Spreadbury was fired. About two weeks later, Wooldridge received a second email[1] with sexual content from Spreadbury. Wooldridge was frightened by receiving two sexually explicit emails from someone with whom she barely had contact, and she petitioned for an order of protection against Spreadbury. On February 19, 2025, the Powell County Justice Court issued an order of protection to

---

[1] As best as we can discern from the hearing transcript and Spreadbury's brief, this "second email" was sent on January 22, 2025, and seems to be the same email that Spreadbury asserts was a parody. It appears to be distinct from, and sent prior to, his "final follow-up" email dated January 22, 2025, which Spreadbury asserts was exculpatory.

Wooldridge as a victim of sexual assault, stalking, assault, or other offense, effective through December 31, 2050. Spreadbury appealed the order. On March 14, 2025, the District Court held a de novo hearing about whether to continue the order of protection.

¶4 At the District Court hearing, both parties appeared pro se and gave narrative testimony describing their conflicting versions of events. Wooldridge also called Principal Crofutt as a witness. Wooldridge and Principal Crofutt testified that Spreadbury's first email to Wooldridge was sexual in nature because it invited Wooldridge to spend time in his hot tub and suggested that she bring a "one piece" swimsuit so his "imagination doesn't run wild." Wooldridge described Spreadbury's second email as "sexually explicit," listing ten statements that she considered sexual. Principal Crofutt testified that Spreadbury sent several emails and letters insulting Wooldridge to Principal Crofutt and other PCHS staff, and that he had risked violating the protective order to hand deliver an email to Principal Crofutt. Wooldridge testified that she believed Spreadbury tried to get her address from the county courthouse, and that he tried to enter PCHS property without permission. Wooldridge testified that Spreadbury's focus on her as an individual, the sexual content of his emails, and his attempt to enter school property without authorization constituted stalking and put her in danger. As a result, Wooldridge was afraid to walk her dog and feared that she could not adequately protect herself at PCHS without the protective order.

¶5 Spreadbury claimed that the majority of Wooldridge's testimony was a lie and called her fears unreasonable. Spreadbury testified that Wooldridge had requested the January 7, 2025 email, that it offered friendly advice from a supportive colleague, and that

3

a simple statement about a swimsuit could not be sexual. He claimed that the second email was a parody, and even if it was offensive or overly sexual, it was protected speech under the First Amendment. Finally, Spreadbury testified that his final follow-up email on January 22, 2025, showed that he would stop contacting Wooldridge and that he intended her no harm; therefore, he reasoned, she could not be afraid of him.

¶6 Based on the testimony and evidence before it, the District Court found that although ninety-five percent of the January 7, 2025 email was professional, the remainder was inappropriate, sexual in nature, and stepped over the line. It also concluded that the First Amendment did not protect Spreadbury's emails. The District Court found that Wooldridge had "absolutely . . . proven" that Spreadbury had stalked her under § 45-5-220, MCA, making her eligible for an order of protection. Because Spreadbury caused Wooldridge a reasonable apprehension of harm, the District Court determined that it was necessary to continue the order of protection for one year, until March 14, 2026.

¶7 This Court will not overturn a district court's decision to continue, amend, or make permanent an order of protection absent an abuse of discretion. *Fritzler v. Bighorn*, 2024 MT 27, ¶ 7, 415 Mont. 165, 543 P.3d 571 (quoting *Boushie v. Windsor*, 2014 MT 153, ¶ 8, 375 Mont. 301, 328 P.3d 631). Abuse of discretion occurs if the district court "acted arbitrarily without conscientious judgment or exceeded the bounds of reason." *Boushie*, ¶ 8. A district court also abuses its discretion if its decision is based on a clearly erroneous finding of fact or an incorrect conclusion or application of law. *Cook v. Bodine*, 2024 MT 189, ¶ 10, 418 Mont. 49, 555 P.3d 236 (citing *In re Marriage of Bessette*, 2019 MT 35, ¶ 13, 394 Mont. 262, 434 P.3d 894).

4

¶8 Spreadbury raises five issues on appeal, which we restate as follows: (1) did the District Court abuse its discretion by denying Spreadbury's motion to dismiss; (2) did the District Court correctly determine that Spreadbury's emails qualified as a "course of conduct" under the stalking statute, § 45-5-220(1), (2)(a), MCA; (3) did the District Court correctly determine that the First Amendment did not protect Spreadbury's emails; (4) did the District Court clearly err in finding that Wooldridge needed immediate protection; and (5) was the District Court biased in its decision-making?

¶9 Under the Montana Rules of Appellate Procedure, the argument section of an appellant's brief must "contain the contentions of the appellant with respect to the issues presented, and the reasons therefor, with citations to the authorities, statutes, and pages of the record relied on." M. R. App. P. 12(1)(g). This Court will not consider unsupported issues or arguments. *Penado v. Hunter*, 2024 MT 216, ¶ 20, 418 Mont. 167, 557 P.3d 434 (quoting *In re Marriage of McMichael*, 2006 MT 237, ¶ 12, 333 Mont. 517, 143 P.3d 439), *reh'g denied*, No. DA 23-0692, Order (Mont. Oct. 29, 2024). As we have repeatedly said, "we are not obligated to develop arguments on behalf of parties to an appeal, nor are we to guess a party's precise position, or develop legal analysis that may lend support to his position." *Estate of Harris v. Reilly*, 2025 MT 126, ¶ 16, 422 Mont. 383, 570 P.3d 552 (quoting *McCulley v. Am. Land Title Co.*, 2013 MT 89, ¶ 20, 369 Mont. 433, 300 P.3d 679). Spreadbury's brief does not explain how the District Court erred in denying his motion to dismiss (Issue 1) or cite legal authority supporting his position. Spreadbury also fails to support his accusation of judicial bias (Issue 5) with legal authority, reasoning, or actions that are distinguishable from his disagreements with the District Court's findings

5

of fact and conclusions of law. Therefore, we will not consider Issues 1 and 5, and we will address Spreadbury's remaining arguments as best as we can discern them.

¶10 Spreadbury argues that the District Court erred by finding "without evidence" that he stalked Wooldridge and that she needed immediate protection, making her ineligible for an order of protection. An individual may petition for an order of protection if he or she is "in reasonable apprehension of bodily injury" *or* is a victim of certain offenses, including stalking. Sections 40-15-201(1), -102, MCA.[2] The offense of stalking occurs if

> the person purposely or knowingly engages in a course of conduct directed at a specific person and knows or should know that the course of conduct would cause a reasonable person to:
>> (a) fear for the person's own safety or the safety of a third person; or
>> (b) suffer other substantial emotional distress.

Section 45-5-220(1), MCA. A "course of conduct" means "two or more acts, including but not limited to acts in which the offender directly or indirectly, by any action, method, communication, or physical or electronic devices or means, follows, monitors, observes, surveils, threatens, harasses, or intimidates a person . . . ." Section 45-5-220(2)(a), MCA. The court "shall" issue a temporary order of protection granting appropriate relief upon finding that the petitioner "is in danger of harm if the court does not act immediately."

---

[2] Spreadbury asserts that § 40-15-102, MCA, only allows petitioners to obtain an order of protection against a partner or family member. This interpretation clearly contradicts the plain text of § 40-15-102(2)(a), MCA (a victim of stalking is "eligible to file a petition for an order of protection against the offender regardless of the individual's relationship to the offender"). Spreadbury seems to argue that the District Court's use of the phrase "reasonable apprehension of harm" indicates that the District Court incorrectly applied the eligibility criteria from § 40-15-102(1)(a), MCA (reasonable apprehension of bodily injury by partner or family member). However, Spreadbury does not support this position with legal analysis or show prejudice from the alleged error, as the District Court specifically found that he had stalked Wooldridge, creating eligibility for an order of protection under § 40-15-102(2)(a), MCA. Because this argument is not sufficiently developed, we will not consider it further. *See Penado*, ¶ 20.

Section 40-15-201(2), MCA.  After a hearing, a court may continue or amend a temporary order of protection if it finds that good cause exists to do so.  Section 40-15-202(1), MCA.

¶11 On appeal, Spreadbury repeats his arguments from the hearing that his first email was helpful, that Wooldridge's fear was unreasonable in light of his nonviolent conduct and unthreatening emails, and that Wooldridge did not need immediate protection.  When acting as a factfinder, it is the trial court's role "to assess the credibility of witnesses and the veracity of their testimony," *Cook*, ¶ 13, and to determine which will prevail when presented with conflicting factual evidence, *Boushie*, ¶ 12.  We will not "second[-]guess" a lower court's determination of the strength and weight given to conflicting testimony. *Cook*, ¶ 13 (quoting *Lyndes v. Green*, 2014 MT 110, ¶ 25, 374 Mont. 510, 325 P.3d 1225).

¶12 The District Court considered Spreadbury's testimony that his conduct was not threatening, but it ultimately found Wooldridge's and Principal Crofutt's testimony more convincing.  We will not second-guess the District Court's determination that part of Spreadbury's first email was inappropriately sexual.  *See Cook*, ¶ 13.  Wooldridge's and Principal Crofutt's testimony described how Spreadbury's repeated attempts to contact Wooldridge caused her to fear for her safety, which supports the District Court's conclusion that she was a victim of stalking under § 45-5-220, MCA, and needed immediate protection.  Because the District Court's decision was not arbitrary and did not exceed the bounds of reason, it did not abuse its discretion by continuing the order of protection for one year.  *See Boushie*, ¶ 8.

¶13 Spreadbury also argues that the District Court abused its discretion by incorrectly determining that his emails were not protected by the First Amendment.  Spreadbury's

7

brief provides no legal authority supporting his claim that his emails are protected speech whether as parody, raising issues of public concern, or government criticism. His brief misquotes *Ashcroft v. ACLU*, 535 U.S. 564, 573-74, 122 S. Ct. 1700, 1707 (2002), which does not discuss parody speech and expressly notes that "[o]bscene speech . . . has long been held to fall outside the purview of the First Amendment." The Statement of Facts section of Spreadbury's brief references his assertions about parody at the hearing, but the "mere reference to arguments and authorities presented in district court proceedings is no substitute for developing and presenting appellate arguments." *State v. Cybulski*, 2009 MT 70, ¶ 14, 349 Mont. 429, 204 P.3d 7 (quoting *State v. Ferguson,* 2005 MT 343, ¶ 41, 330 Mont. 103, 126 P.3d 463). We will not develop Spreadbury's argument regarding parody or public concern on his behalf, and Spreadbury has not met his burden to establish error by the District Court. *See In re Marriage of McMahon*, 2002 MT 198, ¶ 7, 311 Mont. 175, 53 P.3d 1266.

¶14 For the first time on appeal, Spreadbury argues that he did not demonstrate the reckless state of mind necessary to avoid the protective order's chilling effect on his right to free speech under *Counterman v. Colorado*, 600 U.S. 66, 143 S. Ct. 2106 (2023). This Court generally does not address new issues on appeal, but we allow parties "to bolster their preserved issues with additional legal authority or to make further arguments within the scope of the legal theory articulated to the trial court." *Wicklund v. Sundheim*, 2016 MT 62, ¶ 26, 383 Mont. 1, 367 P.3d 403 (quoting *State v. Montgomery,* 2010 MT 193, ¶ 12, 357 Mont. 348, 239 P.3d 929). Even if, for the sake of argument, Spreadbury's *Counterman* argument falls within the scope of the free speech theory he articulated to the

District Court, it does not help Spreadbury's appeal. *Counterman* specifically addressed the mental state necessary for criminal stalking prosecutions; it does not apply to civil protective orders. *See Counterman*, 600 U.S. at 72-73, 143 S. Ct. at 2113. *Counterman* does not change the analysis necessary to determine whether Wooldridge was a victim of stalking under § 45-5-220, MCA. The District Court correctly concluded that Spreadbury's emails were unprotected speech, and it did not abuse its discretion by considering them as evidence of Spreadbury's course of conduct directed at Wooldridge.

¶15 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review. The District Court's order continuing the order of protection for one year was not an abuse of discretion. We affirm.

/S/ JAMES JEREMIAH SHEA

We Concur:

/S/ INGRID GUSTAFSON
/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ JIM RICE